Evans *v.* Greene.

Evans, Respondent, *vs.* Greene & others, Appellants.

1. A deed conveyed a tract of twelve and one-sixth arpens of land, described as being in the *south-east* corner of a larger tract, bounded on the north by lands of E., R. and others, on the west by a street, and as being particu-larly laid down upon a plat on the deed. Upon the deed was a plat, show-ing the shape of the land sold, and the courses and lengths of its four sides. A tract of the size and shape indicated by the plat could be located in the *south-west* corner of the larger tract, so as to be bounded on the west by the street called for, and on the north by the land of E. R., but could not be thus located in the south-east corner. The grantee in the deed took pos-session, and laid out an addition in the south-west corner, and shortly after-wards reconveyed to the grantor six lots in the addition, which were near the south-west corner. *Held,* the call for the south-east corner might be rejected, and the tract located by the remaining matter of description in the deed, taken in connection with the acts of the parties.

2. Upon a question of boundary, an inquiry as to the statements of a deceas-ed surveyor in regard to the location of a corner, if admissible at all, must be made in such a shape as to elicit from the witness whether he ever heard the surveyor say at what point he fixed the corner, and not where it had been fixed at the instance of an interested party, nor where it would be fixed according to his interpretation of a deed.

3. It is no objection to a judgment for the plaintiff in an ejectment suit, that the trial proceeded after the marriage of a female defendant without making her husband a party, he not having applied to be made a party.

*Appeal from St. Louis Court of Common Pleas.*

This was an action in the nature of ejectment, brought in December, 1849, by Augustus H. Evans against Isaac T. Greene, to recover a lot of ground on Main street, in the north-ern part of the city of St. Louis. Elizabeth Ashley, under whom the defendant was a tenant, was made a co-defendant in May, 1850. At the October term, 1853, when the cause was called for trial, the intermarriage of Elizabeth Ashley with John J. Crittenden was suggested. The trial proceeded with-out Crittenden being made a party, and the jury returned the following verdict: " Augustus H. Evans *vs.* Isaac T. Greene and Elizabeth Crittenden and *John J. Crittenden.* We, the jury, find for the plaintiff, and that the defendants are guilty

# DIAGRAM Nº 1.

South line of Louis Labeaume's tract

Common Field of Saint Louis

MISSISSIPPI RIVER

Note:
The line AB represents the eastern boundary of the Common Field of St Louis as ascertained and found by the U.S. Surveyors.
The line a C represents the western boundary of Pierre Chouteau's original specrele concession and survey, the whole of which
is surrounded by the lines a C, CD, De, etc.

U.S. Survey Nº 614
under confirmation to Peter Chouteau.
bounded by the lines a b, b c, c d, &c from etc a
containing 23 arpents 51 perech.

Peter Chouteau to Wᵐ Cᵃ Carr 1810. H⁴ GE EF & TH
24ᵗʰ Dᵉᶜ 1810. 34½ arpens.

This strip encurbent in front called for as a
tract of U.P. Leclue in the Sale to W. C. Carr

Price to Rector
st tb by r w ws

Price to Douglas
gh td Fr Sq q

Peter Chouteau to Fredk Dodes
ik H H10 E

Peter Chouteau to Fredk Kt u h ic it ik H H10 E
th Novr 1812 10 arpend

Price to O'Hara
al ts at ta

O'FALLON ST.

DALY ST.

ASHLEY ST.

Antoine Roy's
11.58 arp.s
U.S. Survey Nº 481

J. Mullanphy
under
H. Eglize
12.91 arp.s
U.S. Survey Nº 446

Scale of 8 chains to an inch

Vander Hueghen, Lith.

of the trespasses charged in the petition, as to a lot of ground beginning at the north-west corner of Main and Ashley streets, and running along Main street northwardly to O'Fallon street, with a depth of 115 feet on the south line on Ashley street, and 97 feet in depth on O'Fallon street, and we find the damages to be $2443, and the monthly value of the premises to be $53 12."

Upon this verdict a judgment was entered against Isaac T. Greene and Elizabeth Crittenden for the possession, and against Greene for the damages and monthly value. The defendants filed their bill of exceptions, and appealed to this court.

Both parties claimed title under Risdon H. Price, the plaintiff under sheriff's deeds, and the defendants under two prior deeds from Price to William M. O'Hara. The question was, whether the land conveyed by the deeds from Price to O'Hara was to be so located as to cover the ground in dispute. If not, it passed by the sheriff's deeds, and the title was in the plaintiff.

The lot in controversy was within a large tract conceded to Peter Chouteau on the 16th of October, 1799, by Delassus, Spanish lieutenant governor of Upper Louisiana, described as being six arpens in depth from the river, bounded north by Labeaume's tract, south by Roy's land, east by the river, and west by the domain of his majesty. This concession was surveyed by Soulard on the 10th of March, 1803, and contained 133 arpens. The survey is shown on diagram No. 1, by the lines $aC$—$CD$—$De$—$ea$.

On the 17th of February, 1809, the old board of United States commissioners confirmed to Chouteau his claim, to the extent of 93 arpens and one perch, (the remainder having been abandoned by him as interfering with land previously surveyed,) and ordered the same to be surveyed "so as not to interfere with the field lots of the Little Prairie adjoining the town of St. Louis." On the 29th of May, 1811, Chouteau received from the commissioners a certificate of confirmation.

On the 2d of April, 1817, an official survey of the confirmation was executed by Joseph C. Brown, numbered 671. This survey is represented on diagram No. 1, by the lines *ab—bc— cd—de—ea.* There was evidence, however, from which it would seem that the west line of the Spanish survey was a little further west than the west line of Brown's survey. The eastern line of the common fields was fixed by Brown, as shown by the line AB. On the 26th of March, 1824, Chouteau received from the United States a patent for the land confirmed, in which it was described as a "tract containing 79 12-100 acres, bounded and described as follows, to-wit : Beginning at the upper corner stone of Antoine Roy's claim of eleven arpens and fifty-eight hundredths on the Mississippi river, thence with Roy's line south 74 deg. 30 min. west seventeen chains and fifty links to a stone on the north edge of a mound, thence north 15 deg. west 14 chains and 67 links to a stone in the front line of the common fields, thence with the line of said fields north 2 deg. west 29 chains and 60 links to an old stone corner, a little north-west of the large mound, thence north 74 deg. 30 min. east 14 chains and 50 links to a stone on the bank of the river, his upper corner ; thence down the river south 4 deg. east 5 chains and 70 links, south 18 deg. east 14 chains and 50 links, south 13 deg. east 9 chains, south 10 deg. east 7 chains, and south 6 deg. west 8 chains to the beginning, being in township 45 north of range 7 east, and designated on the connected plat as number 671."

On the 3d of August, 1808, before the date of the confirmation and Brown's survey, Chouteau conveyed to Meriwether Lewis a portion of his confirmation, describing it in the deed as follows : " A tract of land adjoining the town lots of the town of St. Louis, bounded as follows : Commencing at a stone in Antoine Roy's upper line ; thence running south 67 deg. 30 min. west 45 perches to a stone in the line separating the town lots from the lots which have been granted for cultivation ; thence north 21 deg. 30 min. west 72 perches to a stone in said line ; thence north-eastwardly 45 perches to a stone ; and thence

65 perches to the beginning; containing 30 arpens and 93 perche (Fr. meas.) in superficie."

On the 25th of October, 1811, the administrator of Merither Lewis, after a sale according to law, conveyed this tract to Risdon H. Price, describing it as " a tract of land situate adjoining the town lots of the town of St. Louis, and bounded by a tract of land purchased by said Meriwether Lewis from John Mullanphy, westerly by the forty arpen lots, northerly and easterly by lands the property of Peter Chouteau, the said tract containing 30 arpens and 93 perches, and purchased by the said Meriwether Lewis from the said Peter Chouteau and Bridget, his wife."

The true location of this tract, conveyed by Chouteau to Lewis, and by the administrator of Lewis to Price, was a matter of dispute, and depended upon whether the starting point was taken at the distance of 45 perches from the south-west corner of Chouteau's survey, or at the same distance from the intersection of Roy's line produced, with the eastern line of the common fields as afterwards fixed by Brown. Upon the first hypothesis, the location is shown on diagram No. 1, by the lines *ai—ih—hf—fa*. Upon the second hypothesis, the location is shown either by the lines *mn—nr—rq—qm*, or by the lines *mn—no—op—pm*, according as the west line of the tract is surveyed upon the course called for in the deed, without regard to the common field line, ·or upon the common field line, without regard to the course called for in the deed. Either location under the second hypothesis would include land outside of Chouteau's American survey.

On the 24th of December, 1810, Chouteau conveyed to William C. Carr a portion of his concession, described as follows:. " Beginning at the bank of the river Mississippi at the corner of Mary Philip Leduc's tract, and running westerly six arpens in depth to a stone, thence northwardly five arpens and three-quarters of an arpent to a stone, thence easterly six arpens to the bank of the river Mississippi, and thence with the meanders of said river to the beginning, said tract containing about 34½

11—XXI.

arpens, being part of a tract of larger quantity granted to said Peter Chouteau by a concession from Charles Dehault Delassus, late lieutenant governor of late Upper Louisiana, dated October 16th, 1799," &c. This tract was located as shown on diagram No. 1, by the lines *HG*, *GE*, *EF*, *FH*.

On the 30th of November, 1815, Chouteau conveyed to Frederick Bates a tract described as follows : " A certain tract or parcel of land containing 21 arpens, French superficial measure, be the same more or less, situate, lying and being about twelve arpens north of the aforesaid town of St. Louis, bounded as follows : Eastwardly by the river Mississippi, southwardly by a tract of one arpent, fronting on said river, belonging to said Peter Chouteau, westwardly by lands which said Peter Chouteau sold to Meriwether Lewis, and the field lots or road, if any there be, between the said field lots and the aforebargained premises, and northwardly by land which the said Peter Chouteau sold to Wm. C. Carr, it being a part of a larger quantity which was granted to said Peter Chouteau by the Spanish government, by concession, bearing date October 16th, 1799, surveyed March 10th, 1803."

The location of this tract, (supposing its extreme western line to be in the west line of Chouteau's Spanish survey, and supposing the Lewis tract to be located as shown by the lines *fa—ai—ih—hf*,) is shown on diagram No. 1, by the lines *Ku—uh—hi—ik—kH—HK*.

On the 22d of June, 1816, Price conveyed to Elias Rector a portion of the tract acquired by him from the administrator of Lewis, described as follows : " A certain lot or parcel of land adjoining the town of St. Louis, on the north end of said town, containing one arpent of land in front by five arpens in the rear, and bounded on the south side by lands formerly belonging to said Price, sold by him to Thompson Douglass, westwardly in front on the hill road leading to Camp, and northwardly and eastwardly on the lands now or lately belonging to Peter Chouteau, and being part of the same land which the said Risdon H. Price purchased at the administrator's sale

of the lands of Meriwether Lewis, Esq., deceased, and which said Lewis had purchased of Peter Chouteau and wife." This tract was afterwards reconveyed by Rector to Price, and the deed is only referred to on account of the description.

On the 20th of May, 1817, Price conveyed to Thompson Douglass what was described in the deed as " a certain tract, piece or parcel of land situate near the town of St. Louis, and containing eight arpens, French measure, bounded northwardly and eastwardly by land sold by Peter Chouteau, sr., to Frederick Bates, Esq., southwardly by lands belonging to us, and westwardly by lots granted for cultivation ; the said tract of eight arpens of land being the northern part of a larger tract purchased by the said Risdon H. Price at the public sale of. real estate of Meriwether Lewis, deceased."

On the 20th of May, 1817, Douglass conveyed to Julius Post a portion of the tract acquired by him by the deed last referred to, by the following description : " All that certain lot, tract or parcel of land, containing five arpens superficial French meas-- ure, lying and being in the north side of the village of St.. Louis aforesaid, and bounded as follows, to-wit : Beginning. at the north-westwardly corner of a certain lot or parcel of land' sold by Risdon H. Price to the said Thompson Douglass,. by deed bearing even date with these presents, of which the five arpens hereby conveyed is a part ; thence running eastwardly on the southern line of a piece of land now or lately belonging to Frederick Bates, till it intersects said Frederick Bates' western line ; thence southwardly by and with a westward line of said Frederick's land to a point from which a line to run westwardly (and parallel to the northward line aforesaid con- veyed by these presents,) till it intersects the eastwardly line of land said to have been common field lots attached to the village of St. Louis aforesaid ; and thence northwardly to the place of beginning, so as to contain the just and full quantity of five arpens superficial French measure, as aforesaid."

On the 5th of July, 1817, Douglass conveyed to Simpson & Quarles the remainder of the tract acquired by him from Price

by the following description : " All that certain tract, piece or of land situate, lying and being north of the town of St. Louis, and adjoining the common field lots of the town of St. Louis, containing three arpens, French superficial measure ; beginning at the north-west corner of the lot conveyed by me to Justus Post, and running along the south line of the same to the place where it intersects with the land of Frederick Bates' western boundary, thence south with the line of said Frederick Bates to the north-east corner of Risdon H. Price's land ; thence westwardly to the common field lots ; thence northwardly along the same to the beginning ; bounded northwardly by land of Justus Post, eastwardly by land of Frederick Bates, southwardly by lands of Risdon H. Pice, and westwardly by the common field lots."

On the 19th of August, 1817, Price and wife conveyed to Elias Rector " a certain tract or parcel of land, being part of a tract of land sold by Pierre Chouteau to Meriwether Lewis, deceased, and by the executors or administrators of said Lewis sold to said Price, containing five arpens, situate north of the town of St. Louis and adjacent, beginning as follows, to-wit : At the south-west corner of a tract owned by Simpson & Quarles, unto them conveyed by deed bearing date the fifth day of July, 1817 ; thence south two degrees east, along the front line of the common field one chain to a stone corner, thence south fifteen degrees east two chains and sixty-three links to a stone, the south-west corner of the tract, thence south $86\frac{3}{4}$ deg. east eleven chains and sixty-five links to a stone, thence north ten minutes east, three chains and fifty-three links to a stone, the south-east corner of Simpson & Quarles' survey ; thence north with Simpson & Quarles' line, north $86\frac{3}{4}$ deg. west twelve chains and thirty links to the beginning." This tract is shown on diagram No. 1, by the lines *vb—bt—ts—sw—wv.*

On the 16th of March, 1820, Price and wife conveyed to William M. O'Hara a piece of land described as follows : All that certain undivided equal one half part or moiety of all that certain tract, piece or parcel of land, situate, lying and being

in the township of St. Louis aforesaid, containing twelve and one-sixth arpens of land, being part of a certain tract of land containing thirty arpens and ninety-three perches, French measure, conveyed by Pierre Chouteau and Bridget Saucier, his wife, to Meriwether Lewis, by deed bearing date the third day of August, in the year of our Lord one thousand eight hundred and eight, which said thirty arpens and ninety-three perches is described in said deed as follows, viz : " A tract of land adjoining the town lots of the town of St. Louis, bounded as follows : Commencing at a stone in Anthony Roy's upper line, thence running south 67 deg. 30 min. west forty-five perches to a stone in the line separating the town lots from the lots which have been granted for cultivation, thence north 21 deg. 30 min. west seventy-two perches to a stone in said line, thence north-eastwardly forty-five perches to a stone, and thence sixty-five perches to the beginning, containing thirty arpens and ninety-three perches, French measure, in superficie, which said tract of thirty arpens and ninety-three perches was afterwards sold under an act of court by Edward Hempstead, administrator of Meriwether Lewis, deceased, to the said Risdon H. Price, and which said tract of twelve and one-sixth arpens hereby intended to be conveyed is particularly laid down on a map or plat thereof, made by Joseph C. Brown, deputy surveyor, a copy of which is on this deed, and the original is hereunto annexed, and which said twelve and one-sixth arpens is on the *south-east* corner of the said tract of thirty arpens ninety-three perches, and is bounded on the north by the lands of Elias Rector and others, and on the west by, wholly or in part, Third street."

Upon this deed, was the following plat:

On the 1st of September, 1820, Price and wife conveyed to O'Hara the other undivided half or moiety of the same tract described in the deed last referred to, by the same description, the tract being again described as in the *south-east* corner of the Lewis tract.

As before stated, the question was, as to the true location of the tract conveyed by the two deeds last referred to. The plaintiff claimed that the call for the south-east corner of the Lewis tract was to be disregarded, and that the land conveyed was to be located in the south-west corner, as shown on diagram No. 1, by the lines, *la—at—ts—sl*, in which case it would not cover the land in controversy, which is within the tract represented on the same diagram by the lines, *fl—lw—wg—gf*. The defendants, on the other hand, claimed that it was to be located in the south-east corner of the Lewis tract, so as to cover the land in controversy.

Immediately after O'Hara acquired the tract conveyed by the two deeds from Price last referred to, he laid out an addition in the south-west corner of Chouteau's survey. The west line of the addition, however, was a little further west than the west line of Brown's survey of Chouteau's confirmation. In September, 1820, O'Hara conveyed to Price six lots in this addition by the following description : " All those six lots or parcels of land hereinafter particularly described, situate at the upper end of the town of St. Louis, being parts of a tract of land purchased by Wm. M. O'Hara of the said Risdon H.

Evans *v.* Greene.

Price, and designated on the map hereto annexed by the num-
bers, 82, 83, 84, 85, 86, 87, which said lots are each 30 feet
wide, and 80 feet deep."

Diagram No. 2 is a copy of the plat annexed to this deed,
and shows the location of the six lots conveyed to Price. In
the same month, O'Hara conveyed to Frederick Dent five other
lots in this addition.

On the 26th of December, 1820, O'Hara conveyed to Paul
Anderson what then remained to him of the tract acquired of
Price, describing it as follows : " All that tract or parcel of
land hereinafter particularly described, lying, being and situate
in the town of St. Louis, near the upper end of Main street,
and near the ox saw mill of Joseph Phillipson, containing
twelve arpens and one-sixth of an arpent, which said tract of
land was conveyed to the said O'Hara by Risdon H. Price and
wife by two separate deeds of conveyance, one dated the 16th
day of March last, and the other the 1st day of September
last, said tracts being bounded on the west by lands of Alex-
ander McNair, on the south by lands of John Mullanphy and
others, on the east by lands of Risdon H. Price, (claimed also
by Frederick Bates or his assigns,) and on the north by Elias
Rector."

On the 14th of March, 1826, Anderson conveyed this tract
to William H. Ashley, whose title, after his death, was acquired
by his widow, Elizabeth Ashley, one of the defendants.

The plaintiff claimed the ground sued for under three sher-
iff's deeds, one to Charles S. Hempstead, upon an execution
sale under a judgment against R. H. Price for $1914 15, ren-
dered prior to the 20th of December, 1820, and two to John
F. Darby, upon execution sales under a judgment against Price,
rendered August 4th, 1829. The sheriff's deed to Hempstead
was dated May 29th, 1821, and described the land conveyed as,
" all the right, title, claim, interest and property of Risdon H.
Price to a lot of five arpens of land near Phillipson's ox mill,
bounded on the west, as it is said, by O'Hara, east by Phillip-
son, on the south by Labadie, and on the north by Pierre
Chouteau."

The first sheriff's deed to Darby was dated in August, 1831, and described the land conveyed as " a tract or piece of land situate north of the city of St. Louis, containing thirty arpens ninety-three perches, French measure, it being part of a tract of 93 arpens and one perch, confirmed to Peter Chouteau, which tract of 30 arpens and 93 perches begins at the north-west corner of a tract of land confirmed to A. Roy, bounded south by land confirmed to John Mullanphy, west by the western line of said tract, or the eastern boundary of the common field, north by a tract of land now belonging to Payne, east by a tract of land laid out into town lots, formerly sold to F. Bates by P. Chouteau."

The second sheriff's deed to Darby was dated April 16, 1832, and described the land sold as follows : " Beginning at a stone on the upper or northerly line of a tract of eleven arpens and fifty-eight hundredths of an arpent, confirmed to and in the name of A. Roy, just north of the city of St. Louis, which stone or point of beginning is north 74 deg. 30 min. east, 1312 links from the south-west corner of a tract of land of 93 arpens and one perch, confirmed to and in the name of P. Chouteau ; thence north 14 deg. 30 min. west, nearly about 1150 links to a point south 86 deg. 45 min. east from the north-east corner of a tract of five arpens sold by said Price to E. Rector, August 19th, 1817, as appears of record ; thence north 86 deg. 45 min. west, 140 links, more or less, to the aforesaid north-east corner ; thence south ten minutes west with Peter Lindell's eastern boundary line, 353 links to the north-east corner of a tract of 12⅙ arpens, purchased of said Risdon H. Price by William M. O'Hara; the same course continued with the eastern line of that tract, 870 links to the south-east corner thereof, in A. Roy's upper or northern line ; thence north 74 deg. 30 min. east with A. Roy's line, 437 links to the beginning, containing about 3⅓ acres, more or less." This tract is represented on diagram No. 1, by the lines, *fl—lw—wg— gf*, and includes the land in controversy. All the title of Hempstead and Darby, under the sheriff's deeds, was subsequently acquired by Evans, the plaintiff.

H. W. Leffingwell, a surveyor, called by the plaintiff as a witness, testified that, in locating the tract conveyed by Chouteau to Lewis, he would commence at the distance of 45 perches from the south-west corner of the land described in Chouteau's patent. If, however, the beginning was at the same distance from the east line of the common fields, it would be removed westward to the edge of Main street. Beginning at either point, the land in dispute would be embraced in the Lewis tract. The same witness, being recalled, stated that the distance from the common field line to the curb stone on Main street was 13 chains 44 links, and that 45 perches was 13.12 chains. The western and southern lines of the diagram on the deed from Price to O'Hara corresponded in course with the western and southern lines of Chouteau's survey, and the western line of the diagram corresponded in distance with the west line of Chouteau's survey from the south-west corner of the survey to the south-west corner of the Rector or Lindell tract. The quantity contained in the diagram was by calculation 12⅕ arpens. The figures on the plat of O'Hara's addition (diagram No. 2,) represent mounds. It was not possible to put the O'Hara tract of 12⅕ arpens in the south-east corner of the Lewis tract, and preserve the position of those mounds. By this location, it would lap over considerably on the Rector or Lindell tract, and could not be bounded by Third street. The distance from the curbstone on Main street to the east line of O'Hara's addition was one chain and seventy-five links. There was a stone at Egliz' north-west corner, near the Chouteau corner, but not in the same line. There was also a stone at Roy's north-west corner. The witness did not know whether, in the Spanish surveys, the corners of Egliz and Chouteau were the same. On cross-examination, the witness stated that if the Lewis tract was surveyed by fixing its south-west corner in the common field line, and following that line for its second course, the closing line on the east would nearly correspond with the east line of the O'Hara tract. But still the O'Hara tract could not be located in the south-east corner, because it was to be bound-

ed by Third street on the west, and by the Rector tract on the north; and the Rector tract was fixed by known points in the common field line. The location of the Rector tract depended upon a stone in the common field line, and not upon the Simpson and Quarles' corner.

W. H. Cozzens, a surveyor, called by the defendants as a witness, testified that a point in Roy's line, 45 perches from the east line of the common field, was 36 feet west of Main street, at which point there was a stone placed there by Joseph C. Brown, a surveyor, since deceased, at the request of General Ashley, as the south-east corner of the Lewis tract. The defendant then asked the witness if he had ever heard Brown say where the south-east corner of Mrs. Ashley's land was. An objection to this question was sustained by the court, to which the defendant excepted.

On cross-examination, this witness stated that all he knew of the common field line was as it was established by the United States survey. Many persons had claimed that their field lots extended further east. In 1832–3, the old road ran along east of Broadway and west of the mound south of Ashley's lot. The north line of the corporation was near Roy's line. The road passed at the western foot of the mound. It was a continuation of Third street, and was a cart track there. After passing the mound, it passed further east to Lindell, (or Rector,) east of Broadway all the way to the Big Mound. The course of the west line of the plat on the deed from Price to O'Hara was identical with the west line of the United States survey of Chouteau's confirmation, and the south-west corner had the same angle. He knew the south-west corner of Chouteau's survey. The stone was not now standing. He thought that in the Spanish survey, the north-west corner of Egliz was identical with the south-west corner of Chouteau. In making the United States surveys, Mr. Brown had put Egliz a little further west than Chouteau. The diagram on O'Hara's deed would fit in the south-west corner of Chouteau's survey. The survey within the lines, *al—ls—st—ta,* on dia-

gram No. 1, would contain $12\frac{1}{6}$ arpens. If $12\frac{1}{6}$ arpens were laid out in the south-east corner of the Lewis tract, its west line would not be as far west as Lindell's (or Rector's) west line, and its northern line would not correspond with the south line of Lindell's tract. The land sold to Rector was correctly represented on diagram No. 1, by the lines, *tb*—*bv*—*vw*—*ws*—*st*. The O'Hara tract could not be put in the south-east corner of the Lewis tract without conflict. It could be put in the south-west corner.

The plaintiff asked this witness to state how he would run the lines of the Lewis tract from the calls in the deed without other directions. The defendant objected to this question, on the ground that it was the duty of the court, and not of the witness, to determine from the calls in a deed how he would run the lines. The objection was overruled, and the witness answered that he would locate the Lewis tract, as indicated on diagram No. 1, by the lines, *ai*—*ih*—*hf*—*fa*.

This witness further stated that he never saw a stone in the common field line, where the Roy or Egliz line would strike it. The courses and distances of the lines of O'Hara's addition nearly corresponded with the courses and distances of the lines of the plat on Price's deed to O'Hara, but not quite. The east line of O'Hara's addition was 70 or 80 feet west of Main street. In 1837, Ashley's eastern fence was 72 feet 8 inches from the present Main street. This fence fell down, and afterwards, perhaps in 1838, a plank fence was put up at the western edge of Main street. The old fence ran 50 or 60 feet beyond Chouteau's corner on the west.

It was in evidence that Ashley, shortly after he purchased of Anderson, enclosed his land, and that his eastern fence was on the same line with the eastern fence of Lindell, who had become the owner of the Rector tract; that Lindell afterwards purchased the land east of him and removed his fence to Main street, and about the same time Ashley also moved his fence to Main street. It was also in evidence that in 1823, Third street, above the city limits, branched off into several roads, the prin-

cipal of which was the Bellefontaine road. This was hardly a continuation of Third street.

Thereupon the case was closed on both sides, and the court instructed the jury as follows :

1. If the jury find from the evidence that prior to the execution of the deed from Price to O'Hara, of the 16th March, 1820, a survey and plat of the tract intended to be conveyed by said deed, was made by Joseph C. Brown ; that the plat of said survey was annexed to and referred to in said deed as a description of the land conveyed thereby ; that said survey and plat embrace the quantity of $12\frac{1}{6}$ arpens ; that, according to the courses and distances described in said plat, the survey could not be made within the tract conveyed by Chouteau to Lewis, and south of the tract conveyed by Price to Rector, so as to be bounded by Third street on the west, elsewhere than in the south-west corner of the tract conveyed by Chouteau to Lewis ; and if the jury believe that soon after the conveyance of said $12\frac{1}{6}$ arpens of land to said O'Hara, he took possession thereof according to said plat so annexed to the deed from Price to O'Hara, in the south-west corner of the tract conveyed by Chouteau to Lewis ; that he laid out thereon an addition to St. Louis, extending to the western line of the land conveyed by Chouteau to Lewis, and that he sold and conveyed lots in said addition to Price and others, and that such possession and location were known to Paul Anderson before and at the time of the date of O'Hara's deed to him, and to William H. Ashley before and at the date of the deed from Anderson to him, then the jury ought to regard the land conveyed by Price to O'Hara as truly located, as it was surveyed by Brown and possessed and laid out by O'Hara ; and if the tract of $12\frac{1}{6}$ arpens so located, possessed and laid out, is altogether to the west of the land sued for by the plaintiff in this action, then defendant has shown no title to the land in controversy.

2. If the jury believe from the evidence, that the land conveyed by Price to O'Hara, according to the description in the

deed of the same and the plat annexed, cannot be located in the south-east corner of the land conveyed by P. Chouteau to Meriwether Lewis, but that the calls in the deed and the description on the plat annexed, require the location of said land in the south-west corner of said tract, then the jury will reject the general description of *south-east*, and locate the land according to the survey and the evidence.

3. A plat or diagram annexed to a deed, and referred to in the same for a description of the premises, is part of the deed, and is to have the same force and effect as if the description on said plat or diagram was contained in said deed.

4. If the premises sued for are part of the tract of land conveyed by Price to O'Hara in 1820, the plaintiff cannot recover. If they are are not part of said tract, and are a part of the tract confirmed to Chouteau, and of the land conveyed by Chouteau to Lewis and by Lewis' administrator to Price, and are also embraced within the calls of the sheriff's deed to Darby, and Darby's deed to the plaintiff, then the plaintiff is entitled to recover, unless it is further shown that, before the judgment read in evidence, Price had parted with his title to the premises in question.

5. In ascertaining the location of the premises, the jury are to regard the acts of the parties ; and if they believe O'Hara located his 12⅛ arpens in the south-west corner of said tract, and made there an addition to the city, and conveyed according to said plat and addition, and the same was so made when he conveyed to said Ashley, they will regard such act and location by O'Hara as a practical construction of said deed by the parties thereto ; and if the location is otherwise doubtful, and not easily ascertained, such practical location will be deemed to be the true one, as against O'Hara and those claiming under him.

6. If the jury believe that Ashley, after he received his deed, recognized and adopted said location so made by O'Hara, they will regard the acts of O'Hara and Ashley as evidence of the true location of said premises, unless the contrary be clearly shown.

7. The location of the 12⅙ arpens will depend upon the shape of the larger tract at a corner of which it was to be ; and the larger tract is the tract of 30 93-100 arpens conveyed in 1808, by Chouteau to Lewis.

8. If the jury believe from the evidence, that the eastern line of the common fields, as established in 1817 by survey, was not the same line, either in course or position, with that to which Chouteau had reference in his deed to Lewis in 1808, they will disregard it, in judging of the shape and position of the said tract of 30 93-100 arpens.

9. If the jury believe from the evidence, that the point represented on diagram No. 1 in this cause as (*a*,) was the place of the south-west corner of Chouteau's claim, in 1808, and that the western line of said claim then ran along the course indicated on the said plat of survey as N. 15 deg. W., and was coincident with, or nearly coincident with, a road which was then regarded as the east line of the common fields, then said corner and said course must be taken as the south-west corner and the western boundary, in part, of the tract conveyed in 1808 by Chouteau to Lewis.

10. If the jury find from the evidence, that both Price and O'Hara actually located the tract sold by Price to O'Hara, at the south-west corner of the tract sold by Chouteau to Lewis, this is strong evidence that such was the correct location of it.

To the giving of which instructions, the defendants, by their counsel, excepted ; and the court, of its own motion, gave the following instruction :

11. In ascertaining the true location of the various tracts of land conveyed by the deeds offered in evidence, the jury should follow and give effect to all the calls, where it is possible to do so ; but if all the calls in any conveyance cannot be reconciled, then the jury will give preference and force to the calls, in the following order : 1. Natural boundaries. 2. Artificial marks. 3. Adjacent boundaries. 4. Courses and distances.

If, however, in any case, it is plain that there is a mistake, then the jury may resort to the inferior calls to determine the true location, and reject the superior calls : provided, that by

so doing, they are satisfied from the evidence, that the true location can alone be had; but, unless it is plain that there is a mistake, they should adhere to the calls in the order above enumerated.

Defendants excepted to this instruction. At defendants' instance, the court gave the following instructions :

1. If the south-west corner of Chouteau's survey is not on the line separating the town lots from the lots granted for cultivation, as the same was known or existed August 3d, 1808, then the south-east corner of the tract conveyed by Chouteau to Lewis is at the distance of 45 perches from said separating line, as it existed in 1808, and not at that distance from the south-west corner of Chouteau's survey.

2. In locating the tracts of land in question, calls in deeds for a known or ascertainable line or corner must be preferred to calls for course and distance.

3. The plaintiff, in the present action, cannot recover for any land which the defendant and those under whom he claims have held in continued possession, under claim of title, for more than twenty years before the commencement of this suit.

4. If any part of the land in controversy lies without the lines of the tract conveyed by Chouteau to Lewis, the plaintiff cannot recover such part in this action.

The defendants asked and the court refused the following instructions :

1. The jury are instructed that the land conveyed by Peter Chouteau to Meriwether Lewis, is a tract bounded by four lines ; that the first of these lines is ascertained and fixed by beginning at a point in Roy's upper line, distant 45 perches along a line running south 67 deg. 30 min. west from the line separating the town lots from the lots which had been granted for cultivation ; and from that beginning point, running south 67 deg. 30 min. west 45 perches to a stone in the line separating the town lots from the lots which had been granted for cultivation ; that the second boundary line of said land is ascertained and fixed, by beginning at the point attained as the end of the first

line, and running thence north 21 deg. 30 min. west 72 perches to a stone in said line, which separates the town lots from the lots granted for cultivation; and that if said course would not coincide with the course of the line separating the town lots from the lots granted for cultivation, the line to be run must follow such a course as to end in the said line separating the town lots from the lots granted for cultivation, even though by so doing the course of N. 21 deg. 30 min. W. be abandoned. The third line is ascertained and fixed by running from the point at the end of the second line north-eastwardly 45 perches with such course, that the end of said third line will be 65 perches from the point of beginning of the first line ; and the fourth line is ascertained and fixed by running from end of the third line 65 perches to the point of beginning of the first line. The courses of the first and second lines are without allowance for the variation of the needle, if, at the time of the deed from Chouteau to Lewis no allowance was made for such variation.

2. The second boundary line of the land conveyed by Chouteau to Lewis, is ascertained and fixed by beginning at the point attained as the end of the first line, and running thence north 21 deg. 30 min. west 72 perches to a point in said line which separates the town lots from the lots granted for cultivation ; but if, by following that course, the line would not end in said line separating the town lots from the lots granted for cultivation, then the second boundary line shall be run either on said prescribed course, or on a course which will cause it to end in the separating line ; and the course to be run is that which would be most advantageous to said Lewis, and cause the land conveyed to him to conflict least with the other tracts of land.

3. The land conveyed by Price to O'Hara is in the southeast corner of the tract conveyed by Chouteau to Lewis.

4. The plaintiff is not entitled to show in this case that there is a mistake in the description of the land described in the deeds from Price to O'Hara.

5. If the call in the deed from Price to O'Hara for the south-

east corner of the larger tract be irreconcilable with the plat endorsed on the deed, the call for the corner must prevail, and the plat, so far, must be rejected.

9. The plat made by O'Hara and annexed to his deed read in evidence, is no evidence against the present defendant, of the true location of the tract of $12\frac{1}{6}$ arpens.

10. If the jury should find that O'Hara, by mistake, located his $12\frac{1}{6}$ arpens elsewhere than in the south-east corner of the larger tract, by a plat merely, neither he nor those claiming under him, are, as against the plaintiff, concluded by such mistaken location.

Defendants then prayed the court as follows :

The court is requested by the defendant to instruct the jury as to the proper manner of locating the tracts of 30 93-100 arpens, and of $12\frac{1}{6}$ arpens, mentioned in the deeds from Chouteau to Lewis, and from Price to O'Hara, according to the terms of said deeds respectively.

Which prayer the court refused to grant.

*R. M. Field* and *Barton Bates*, for appellant. 1. The court erred in permitting the trial of the cause without John J. Crittenden being made a party. No valid judgment could be rendered against his wife without his being joined. (Prac. Act of 1849, art. 3, § 6, 9, 12. R. C. 1845, tit. Prac. in Chancery, art. 5, § 21, 22, 23 ; tit. Ejectment, § 5.) 2. The court erred in permitting the witness, Cozzens, to testify as to the manner in which he would survey the Lewis tract from the calls in the deed. The construction of the deed was a matter of law. 3. The court erred in refusing to permit the witness, Cozzens, to testify as to the statements of the deceased surveyor, Brown, as to the corner of Mrs. Ashley's land. There is a great preponderance of American authority in favor of the admissibility of the declarations of a deceased surveyor on a question of boundary. (See the cases collected: 1 Cow. & Hill's notes to Phill. Ev. p. 628–639. 15 N. H. Rep. 546. 8 Leigh, 697. 9 Conn. Rep. 451. 3 McCord, 227. Id. 259. 2 Littell, 159. 1 Cooke, 142. 5 N. H. Rep. 37.)

4. The court also erred in admitting in evidence the deeds of O'Hara to Price and to Dent. The only legal effect of this testimony would be, to show that O'Hara claimed to be the owner of the lots conveyed. But it was introduced and used to show that he was not the owner of other land conveyed to him. For this purpose, it was plainly incompetent. 5. The instructions given did not correctly state the law applicable to the case. The call in O'Hara's deed for the *south-east* corner of the larger tract was the leading and superior call, and controlled all the others. (*Hartt* v. *Rector*, 13 Mo. Rep. 497. *Campbell* v. *Clark*, 8 Mo. Rep. 553.) The call for a line is to be regarded like a call for a natural object, and will control the calls for course and distance. (*Miller* v. *White*, 1 Taylor, 135. *Pennington* v. *Bordley*, 4 Har. & J. 457. 7 Iredell, 310. 13 Pick. 145. 13 Wend. 300. 3 Murphy, 82. 4 Paige, 209. 11 Conn. Rep. 335. *McGill* v. *Somers*, 15 Mo. Rep. 8 Mo. Rep. 553.) If there was a mistake in the call for the *south-east* corner, it could not be inquired into in the present suit. (*Hartt* v. *Rector*, *ubi supra*. *Bell* v. *Mann*, 6 N. H. Rep. 205. *Cameron* v. *Irwin*, 5 Hill's Rep. 272.) The only evidence of a mistake relied on by the plaintiff consists of the courses and distances laid down on the plat, and which he says are repugnant to the principal call for the corner. But to declare the principal call a mistake, on such evidence, would be equivalent to reversing the rule as to the relative dignity of the calls. The cardinal rule, in the construction of conveyances, is, that where two or more known objects, points or lines are called for, you must run to them all, though you may be obliged to sacrifice course and distance. (Hughes' Rep. 104.) Applying this rule to the present case, the land must be located in the *south-east* corner, and must be extended to *Third* street on the west; and to attain this end, course and distance, if necessary, must be disregarded. So too, as the conveyance was of a *tract of land* by a particular description, the quantity mentioned is of no importance, and must be disregarded. (*Bompart* v. *Marshall*, 18 Mo.

Rep.) But even if the call for quantity were treated as imperative, the result in the present suit would still be the same. For then, the 12⅛ arpens must be laid off in the south-east corner, in such form as to extend to *Third street*. This would be accomplished by shortening the distance of the east line, and varying the course and distance of the north line. The land in dispute would be included.

The plat on the deed can have no greater effect than if the lengths and courses of the lines were described in words in the body of the deed. (9 Iredell's Rep. 58.)

The court erred in refusing either to locate the Lewis tract as asked by the defendants, or to tell them how it ought to be located, and in leaving the whole matter to their conjecture or caprice. It was necessary to know the location of that tract, in order to determine the location of the smaller one ; and it was a question of law for the court. (*Hartley* v. *Morgan*, 1 Dev. & Batt. 430.)

(The counsel entered into a criticism of the various instructions, but this portion of the brief is omitted.)

*T. T. Gantt*, for respondent. 1. The marriage of Mrs. Ashley with Mr. Crittenden, *pendente lite*, will not be allowed to affect any of the subsequent proceedings. No judgment was taken against John J. Crittenden. He is not a party to the record. (*Dayley* v. *White*, Cro. Jac. 323, cited in Buller's Nisi Prius, p. 22. *Cooper* v. *Hunchin*, 4 East, 521. *King* v. *Jones*, 2 Strange, 811. 2 Ld. Raymond, 1525. *Crockett* v. *Ross*, 5 Greenleaf, 445. *Roosevelt* v. *Dale*, 2 Cow. 581.) 2. The two first instructions as to the location of the O'Hara tract correctly laid down the law. (*Vose* v. *Handy*, 2 Maine Rep. 322. *Hull* v. *Fuller*, 7 Vt. 100. *Wing* v. *Burges*, 13 Maine, 111. *Jackson* v. *Clark*, 7 Johns. 217. *Loomis* v. *Jackson*, 19 Johns. 449. *Jackson* v. *Moore*, 6 Cow. 717.) 3. The instruction to the effect that a plat annexed to a deed becomes a part of it, and is to have the same effect as if the description contained in the plat were incorporated in the deed, is good law. (1 Maine, 219. 3 Sumner, 170. 4 Sumner,

576.)   4. The instruction authorizing the jury, in locating the land, to take into consideration the acts of the parties, was correct.   (13 Conn. 309.   14 Mo. Rep. 482, and cases cited. 9 N. Hamp. 126.   1 Metcalf, 378.   3 Mass. 362.)   5. The instruction as to the relative dignity of the calls, and authorizing them, in case of a plain mistake, to reject the superior, and resort to the inferior calls, to determine the location, was a correct exposition of the law.   (*Loring* v. *Norton*, 8 Maine Rep. 61.   *Jackson* v. *Moore*, 6 Cow. 717.   13 Johns. 346.   7 Johns. 238.)   The court might have gone further, and told the jury that if, in the description of the land conveyed by Price to O'Hara, enough occurred before the mention of the " *south-east* corner" to fix the land granted in quantity and position, then all that follows should be absolutely rejected, if inconsistent with the first part of the description. (*Motterly* v. *Adams*, Plowden, 131.   *Swift* v. *Eyres*, Cro. Car. 546.   4 Cruise's Dig. ch. xx, § 58, 61.   4 Mass. 205.)

*W. R. Biddlecome*, on the same side, in a printed brief, argued the following points :

1. Marriage does not abate a writ at common law, nor in chancery, nor by statute.   It only gives the husband the right to come in on his own application, or he can be brought in at the instance of the plaintiff under the statute.   (Prac. Act of 1849, art. 3, § 9.   R. C. 1845, tit. Prac. at Law, art. 5, § 13. Story's Eq. Pl. § 354.   1 Barb. Ch. Pr. 676.   Mit. Pl. 58. 1 Har. Prac. 128.   1 Ves. 181-2.   10 Paige, 82.   1 Rol. Abr. 869, L. 50.   1 Rol. Abr. 15.   1 Vin. Ab. 9, & 1 Supp. to Vin. Abr. 1.   1 Salk. 310.   2 Str. 811, and S. C.   2 Ld. Ray. 1825.)   2. The deed from Chouteau to Lewis, of August, 1808, conveyed 30 93-100 arpens of ground out of the south-west corner of his Spanish concession, as it should be defined and located by the confirmation and survey of the United States government thereafter to be made.   (*Bogy* v. *Shoab*, 13 Mo. Rep. 365, 374.)   3. The tract of 12¼ arpens sold in 1820 by Price to O'Hara, is located in the south-west corner of the Lewis tract, and the grantees of O'Hara, Anderson and Ash-

ley can take no more under their deeds than 12⅙ arpens, and that in the south-west corner. (*Evans* v. *Ashley*, 8 Mo. Rep. 177.) The call for the *south-east* corner may be rejected as *falsa demonstratio*. (*Beck* v. *Love*, 1 Dev. & Bat. 65. *Riddick* v. *Leggett*, 3 Murph. 539. *Middleton* v. *Perry*, 2 Bay, 541. *Jackson* v. *Loomis*, 18 J. R. 81. *Lush* v. *Druse*, 4 Wend. 313. *Wing* v. *Burgess*, 1 Shep. 111.) The acts of the parties may be resorted to to determine the location, where the description in the deed is ambiguous or uncertain. (*Jackson* v. *Vedder*, 2 Caines, 210. *Foule* v. *Bigelow*, 10 Mass. 379. *Haven* v. *Brown*, 7 Greenl. 421. *Jackson* v. *Wood*, 13 J. R. 348. *Livingston* v. *Ten Broeck*, 16 J. R. 482.) Ashley and those holding under him are estopped from now asserting a location contrary to the one claimed when Evans bought. (*Taylor & Mason* v. *Zepp*, 14 Mo. Rep. 482.)

LEONARD, Judge, delivered the opinion of the court.

The principal question in the cause relates to the proper location of a piece of land of twelve and one-sixth arpens, now within the city of St. Louis, under Price's deed to O'Hara, of the 16th of March, 1820, designated on diagram No. 1, by the lines *at—ts—sl—la*, and hereafter referred to as the O'Hara tract. This land was part of a larger tract of 30 93-100 arpens, originally sold by Chouteau on the 3d of August, 1808, to Meriwether Lewis, designated on the map as *ai—ih—hf—fa*, and hereafter referred to as the Lewis tract, and which, after Lewis' death, was acquired by Price, on the 25th of October, 1811, at an administrator's sale of Lewis' title.

And this tract was part of a still larger tract, originally conceded to Chouteau by the Spanish government, marked on the map as *ab—bc—cd—de—ea*, and to be referred to as the Chouteau confirmation. The description given of the O'Hara tract, in Price's deed, is, " all that certain tract, piece or parcel of land, situate, lying and being in the township of St. Louis aforesaid, containing twelve and one-sixth arpens of land, be-

ing part of a certain tract of land containing thirty arpens and ninety-three perches, French measure, conveyed by Pierre Chouteau and Bridgette Sauciere, his wife, to Meriwether Lewis, by deed bearing date the 3d day of August, in the year of our Lord one thousand eight hundred and eight, which said thirty arpens and ninety-three perches is described in said deed as follows : " A tract of land adjoining the town lots of the town of St. Louis, bounded as follows : Commencing at a stone in Antoine Roy's upper line, thence running south 67 deg. 30 min. west, forty-five perches to a stone in the line separating the town lots from the lots which have been granted for cultivation, thence north 21 deg. 30 min. west, seventy-two perches to a stone in said line ; thence north-eastwardly forty-five perches to a stone, and thence sixty-five perches to the beginning, containing thirty arpens and ninety-three perches, French measure, in superficie, which said tract of thirty arpens and ninety-three perches was afterwards sold under an act of court, by Edward Hempstead, administrator of Meriwether Lewis, deceased, to the said Risdon H. Price, and which said tract of twelve and one-sixth arpens, hereby intended to be conveyed, is particularly laid down on a map or plat thereof made by Joseph C. Brown, deputy surveyor, a copy of which is on this deed, and the original is hereunto annexed, and which said twelve and one-sixth arpens is on the south-east corner of the said tract of thirty arpens and ninety-three perches, and is bounded on the north by the lands of Elias Rector and others, and on the west by, wholly or in part, Third street."

The question upon the trial was, whether, under this description, the land sold must be located in the south-east corner of the Lewis tract, or whether, if it appeared that the words " south-east" were put into the description by mistake, proceeding either from a mere slip on the part of the writer of the deed, in using these words for the words " south-west," or from misapprehension on the part of the grantor as to the true position of the south-east corner of the Lewis tract, they could be rejected, and the land located by the other descriptive calls.

The jury, under the direction of the court, located the land in the south-west corner, disregarding the call for the south-east corner, and the propriety of these instructions being contested, brings before us the question we have suggested as to the proper rules of law applicable to the location of this land.

It is thus seen that the question, as to the location of the O'Hara tract, involving in it the true positions of the southeast and south-west corners of the Lewis tract, depends, in a good degree, upon the real or supposed position of that tract, and that this depends again upon the position of the Chouteau concession. For the purpose of ascertaining the proper location of these several pieces, as they were successively carved out of the larger tracts, from which they were taken, it is proper that we carry ourselves back to the times when these transactions occurred, and these descriptions were given; and, surrounding ourselves with the circumstances that then existed, in that way put ourselves in a position rightly to understand the acts of these parties, and to interpret and apply, understandingly, the descriptions they themselves have left us of what they did; and we may then refer, in order to test the correctness of our conclusions, to the practical interpretation that the parties themselves and others interested put upon these acts, both at the time and subsequently.

The Chouteau tract was an original concession to him by the Spanish government on the 16th of October, 1799, of 133 arpens, which was afterwards, on the 10th of March, 1803, surveyed by Soulard, under the Spanish authorities, so as to embrace the quantity granted, and was then bounded on the east by the Mississippi river; on the south, in part, beginning on the river, by Roy's land, (which was afterwards acquired by Chouteau,) and on the west by the royal domain.

In August, 1808, five years after this survey, and when the land embraced in it was yet in the condition in which it was left, both as to boundary and title, by the concession and survey, Chouteau sold a part of it (30 93-100 arpens) to Lewis, describing the part sold as follows : " A tract of land adjoin-

ing the town lots of the town of St. Louis, bounded as follows: Commencing at a stone in Ant. Roy's upper line ; thence running south 67 deg. 30 min. west, forty-five perches to a stone in the line separating the town lots from the lots which have been granted for cultivation ; thence N. 21 deg. 30 min. west, seventy-two perches to a stone in said line ; thence northeastwardly forty-five perches to a stone, and thence sixty-five perches to the beginning, containing thirty arpens and ninety-three perches, (French measure,) in superficie."

This, it is seen, is a conveyance of a specific portion of the earth's surface, marked upon the ground by artificial monuments at the termination of the four straight lines that enclose it, and as an original question, untouched by the acts of the parties and the peculiar condition of the land titles of the country at the time, there would not seem to be any doubt as to its true location ; nor, indeed, do we know that there was any, until subsequent events showed that the eastern line of the common field lots was not in the position indicated by the deed. In such a description, the law is, that the monuments placed at the angles, when certainly ascertained, fix the position of the land, regardless of the course and distance of the connecting lines ; and if they are not to be found, as their original position constitutes the true boundary, that position must be established by proof, and the highest, and as a general rule, the controlling proof upon the subject is, the description of their position, given by the parties themselves in the deed. ,When, however, in March, 1820, Price made the sale to O'Hara, and gave the description of the land sold which has occasioned the present controversy, the boundaries of the Lewis tract were, it would seem, somewhat different, in the opinion of the parties inter ested, from what they were in 1808, when the title originated. In 1817, Mr. Brown made an official survey under the United States, which ascertained the true position of the eastern line of the common field lots, west of the south-west corner of the Chouteau confirmation. This line had never been previously surveyed, and had been supposed to be further east at that

point than it was fixed by Brown. It is indicated on diagram No. 1 as *AB*, and intersects the western line of the Spanish survey of Chouteau's concession, leaving south of the intersection a gore of land between the common field lots and the concession, and north of it, cutting off a portion of the concession to the west.

Going back now to 1811, it appears that Chouteau's concession was confirmed on the 28th of May, of that year, to the amount of 93 arpens and one perch, Mr. Chouteau throwing off the excess, in order to get rid of conflicting claims, and this confirmation was subsequently, in April, 1817, officially surveyed by Brown, as indicated on the map. The southern line of this survey is identical with the Spanish survey, and the western lines of both surveys, beginning at the south-west corner, coincide until they are intersected by the common field line, when Brown's line leaves the line of the Spanish survey, and thence northwardly coincides with the common field line, throwing out of the confirmation so much of it as lays west of what is ascertained to be there the eastern line of the common field lots.

Both parties to the suit claim the land in controversy under Price, as part of the Lewis tract; the defendant through O'Hara, as the owner of the O'Hara tract, and the plaintiff under an execution sale of Price's property, made after the execution of the deed to O'Hara, upon the ground that the land now in controversy is not included in that deed; and so it is not material here to inquire whether the ascertainment of the true position of the eastern line of the common field lots had, in point of law, the effect of removing the south-east corner of the Lewis tract westwardly along Roy's line to a point in that line forty-five French perches east of the intersection of the true common field line, by an extension of Roy's line. But it is material to inquire how the parties viewed this matter — what was the effect of it in their opinion — and whether they acted upon the assumption that it had the effect suggested, of removing the south-east corner of the Lewis tract westward to

the new point indicated on diagram No. 1 at *m;* for, if Price acted upon this supposition, believing, when he sold to O'Hara, that the south-east corner of the Lewis tract was at a point in Roy's line, west of the old corner, to be obtained in the manner indicated, but erred when he fixed its position at a point to be touched by an extension southward of Rector's east line, which is now ascertained to be several feet west of the supposed new corner, we have an explanation of the alleged inconsistency in the calls of the deed, which reconciles all the testimony, and produces the same result as the plaintiff's theory of supposing that the words " south-east " were used by mistake for the words " south-west." Price, we think, acted under a double error—an error of law as to the effect of the ascertainment of the true common field line upon the south-east corner of the Lewis tract, and a mistake in a matter of fact—the true position of that corner, if established forty-five perches east of the intersection of the common field line, by an extension of Roy's line ; and the result of this double error was, the introduction into his description of the land sold to Price, of the words " south-east corner," which is now ascertained to be a false description, even assuming that the south-east corner of the Lewis tract is at the new point in Roy's line, west of the old corner.

In 1817, four conveyances were made of portions of the Lewis tract ; two by Price, one of eight arpens to Douglass, of the 20th of May, and the other of five arpens to Rector, of the 19th of August, and two by Douglass, one of five arpens, part of his eight arpens, to Post, of even date with his convey-ance from Price ; and the other on the 5th of July, to Simp-son and Quarles, of the remaining three arpens.

That we may understand the descriptions in these conveyan-ces, it is necessary to remark that in December, 1810, Chou-teau sold to Carr 34½ arpens out of his concession, by speci-fic boundaries, extending east and west across the whole tract, and in November, 1815, sold 21 arpens out of it to Bates, bounded east by the Mississippi river, south by the one arpen

tract, west by the Lewis tract, and northwardly by the land sold to Carr. The piece Price sold to Douglass is taken off of the north end of the Lewis tract, and is described as bounded westwardly by the lots granted for cultivation, and northwardly and eastwardly by Bates' land, the closing line on the south being left open to be fixed in position and course by the quantity. The five arpens out of the Douglass tract, conveyed on the same day to Post, are taken off of the north end of the piece, with the same boundaries on the west, north and east that are given in the deed from Price, the closing line to be parallel with the northern line, but left open to be fixed in position by the quantity. The remaining three arpens are subsequently described in Douglass' deed to Simpson & Quarles, as beginning at Post's south-west corner, and bounded thence by Post's south line, until it intersects the land of Bates, thence by Bates' western line " to the north-east corner of Risdon H. Price's land," thence westwardly to the common fields, and thence northwardly along the common field line to the begining, leaving the southern and northern lines both open, to be afterwards ascertained by the quantity.

We come now to Price's deed to Rector, which discloses most important facts in relation to the boundaries of the several subdivisions into which Price divided the Lewis tract, and shows, very satisfactorily, the opinion he entertained and acted upon in reference to the proper location of that tract, after the ascertainment of the true common field line—and by the artificial monuments that were then placed upon the ground, fixes the position of the eastern line of the tract as he then supposed it must be located. This deed describes the land conveyed as being enclosed within five lines, with a stone placed at four of the angles, and gives the courses and distances of all these lines. It describes the first course in the western boundary as being the common field line, and by giving the direction of the second course in that boundary, from $b$ to $t$, identifies it with the western line of the Chouteau confirmation. It describes the north line of the tract sold, as being identical with the south

line of the Simpson & Quarles tract, terminating at the south-east and south-west corners of that tract.

We learn, then, from these descriptions, that Price, at this time, limited the Lewis tract on the west to the western line of the American survey of the Chouteau confirmation, and on the east to a new line west of the old line, to be determined by running from the new corner in Roy's line, either to the old north-east corner of the tract, or to a new north-east corner, to be obtained by re-constructing the figure of the Lewis tract, either as shown by the figure *mn—nr—rq—qm,* or by the figure *mn—no—op—pm.*

It is palpable enough from the deed, that Price thought the Lewis tract was limited on the west, as we have indicated, and a few considerations will render it quite as manifest that he did not extend its eastern boundary beyond a line to be obtained by running northwardly from the new south-east corner. Before he could convey, by specific boundaries, the five arpens to Rector, it was necessary that the southern line of the Simpson & Quarles' survey, which was the southern line of the Douglass tract, should be located. He was interested in its location, and being bound by his deed to Douglass to locate it in the eastern line of the Lewis tract, and so far south along that line as to include in the tract eight arpens, it was necessary for him to ascertain not only the eastern, but also the northern and western lines of the Lewis tract, and to put this line in a position that it would cut off of the north end of the Lewis tract eight arpens, and terminate in the eastern boundary of that tract, which is described as the line running north and south between Lewis and Bates. This was done by this deed, which fixes the eastern termination of it at the common corner of the Rector and Douglass or Simpson & Quarles' tracts, and this corner being now ascertained by measurements upon the ground, obtained from the deed, to be several perches west of the old eastern boundary of the Lewis tract, indicates, clearly enough, that Price had then abandoned that boundary, and was governed by the new line, to be obtained by running to the supposed new

south-east corner in Roy's line, west of the old corner; and as the eastern line of the Douglass tract lay wholly in the eastern boundary of the Lewis tract, and so was now wholly in this new eastern line, which was a straight line from corner to corner, it is not unreasonable to suppose that the eastern line of the Rector tract was a continuation of the same straight line, and the course of it being given by the deed, it is now found by measurement upon the ground, that an extension of it intersects Roy's line west of what is now ascertained to be the true position of the supposed new south-east corner of the Lewis tract, but not so far from it as to exclude the idea that it was the point expected to be reached by it, especially when it is considered that there seems yet to be some difference of opinion among surveyors as to its true position; one of the witnesses in the present case fixing it in Main street, and the other thirty-six feet west of the curb stone, which is less than one hundred feet east of the point touched by an extension of Rector's eastern line; and this is the more probable, as to suppose otherwise is to suppose that Price intentionally retained a small strip of ground between the Rector tract and the new eastern line of the Lewis tract, not a quadrilateral figure, as seems to be supposed by the map in the cause, but a triangular shaped piece, standing on a base of a few feet from *s* to *z*, and terminating in the eastern line of the Lewis tract, at the south-east corner of the Douglass tract.

It is now, it seems, ascertained that Price was in an error in a matter of fact, in supposing that the direction he gave to Rector's eastern line would intersect Roy's line at the new south-east corner of the Lewis tract, so that the line would coincide with the new eastern line of the larger tract. It is enough, however, for our present purpose, if he so thought, and acted upon that assumption, how much soever he may have erred as to the fact. In his view of the matter, the south-east corner of the Lewis tract was in the angle at *l*, made by an extension southward of Rector's eastern line to Roy's line, and the piece of land that remained to him, after the sale to Rec-

tor, was situated in what he thought was the south-east corner of the Lewis tract, and is indicated on the map as *at—ts—sl* to *la*, and this piece of land, as the proof now shows, contains twelve and one-sixth arpens, is enclosed by four lines, two of which (on the north and west,) coincide with the lines of Brown's survey of Chouteau's confirmation, and therefore have their courses ascertained, and the courses of the other two are ascertained by reference to the Rector survey, and it is bounded, in part, on the west by what was then the Bellefontaine road, a continuation of Third street, now Broadway, and on the north by the south line of the Rector tract, which is here the common boundary of both tracts, and thus fixes the length of the north line of the tract now referred to.

The deed to O'Hara was made three years after all these transactions, when, however, there had been, as yet, no change in the land or in the surrounding objects, except, perhaps, that other persons may have, in the mean time, acquired interests in the Rector tract, and that the Bellefontaine road, owing to the extension of the city in that direction, may have, perhaps, assumed more the appearance of a street than it had in June, 1816, when Price, in selling a portion of this Lewis tract, (the five acres conveyed to Rector, by his deed of that date,) describes the land sold as bounded "westwardly in front on the hill road leading to camp."

Mr. Price now, in 1820, causes a survey to be made of the ground he is about to sell, and, in describing it, first designates it as a part of the Lewis tract, then gives the length and courses of each of the four sides that inclose it, by a plat of the survey annexed to the deed, on which the courses and distances of the respective sides are specified, and then proceeds to fix its position in the Lewis tract, by describing it as being in the south-east corner of that tract, and bounded on the north by the lands of Elias Rector and others, and on the west wholly or in part by Third street. This tract of land corresponds in shape and area, with great exactness, with the piece of ground in the Lewis tract, which then remained to Price—the eastern,

southern, western and northern sides of both tracts correspond-
ing respectively in course, and the northern side, the only one
the length of which had been previously ascertained by adjoin-
ing surveys, corresponding also in length. Now, by the call
for Third street, it is carried westward to the western line of
the Chouteau confirmation, and by the call for the land of Elias
Rector northward to the south line of the Rector tract, and
these two lines being thus located, the other two lines are found
to correspond, in course and position, with the two remaining
sides of the tract supposed to have been left to Price after the
deed to Rector in 1817. Price, when he made that deed, indi-
cated where he supposed the south-east corner of the Lewis
tract was, and what was then so strongly implied from his acts
is now declared in almost so many words by this deed to O'Hara,
where it is said that this piece of ground, thus described, and
which, when located according to its other calls and descrip-
tions, covers the whole remaining piece, lies in the south-east
corner of the Lewis tract.

It has already been remarked that only one moiety of the
land was conveyed by the deed of March, 1820, and that the
remaining moiety was conveyed by deed of the 1st of Septem-
ber, of the same year, by the same description ; and we may
here observe that this repetition of the words " south-east"
may be allowed to have some weight in support of the view here
suggested, and against the idea that it was a mere clerical er-
ror, not yet detected, or, if detected, fallen into a second time
by a slip of the writer. The form too of the description cor-
roborates the idea that the words " south-east" are intention-
ally used, to convey the idea in the mind of the party. The
mode of identifying the land here adopted was, to give the
courses and lengths of the lines inclosing the piece surveyed,
and then to fix its position by reference to surrounding objects
on all sides, and this is done by reference to Third street on
the west, and Rector's land on the north, and by the call for
the south-east corner of the Lewis tract for its boundaries on
the east and south. Upon the idea, however, that the words

"south-east" were used by mistake for "south-west," the general description, by reference to adjacent objects, would be deficient in referring to no object on the east, and redundant in fixing the western boundary not only by the corner, but also by reference to Third street.

We now refer to the practical construction of this description, furnished by the acts of the parties themselves, not only at the time of the conveyance, but subsequently.

O'Hara, very shortly after the conveyance to him, laid out a portion of the ground into lots and streets, as an addition to St. Louis, and the position of this addition is shown by the natural mounds found upon the ground and represented on the map to be in the south-west corner of the Lewis tract, as originally surveyed; and in September, 1820, the same month that the last deed was made to him by Price, O'Hara sold and conveyed to Price six lots in this addition, one of which is within ninety feet of the south-west corner of the Lewis tract, as originally surveyed.

Here is a cotemporaneous practical construction given to the description by both the parties to the deed, and it fixes the position of the O'Hara tract, not in the south-east corner of the Lewis tract, as originally surveyed, nor in the supposed south-east corner, obtained by carrying the beginning point westward along Roy's line, thirty-six feet west of Main street, but within the boundaries we have indicated, the western line of the confirmation on the west, and an extension of Rector's eastern line on the east, thus extending from the south-east to the south-west corners of the Lewis tract, as he then located it, and embracing all of it that yet remained to him undisposed of.

Afterwards and before or in December, 1820, a large judgment was obtained against Price in the St. Louis Circuit Court, and his property swept from him by execution, so that he ceased to have any further interest in these questions.

And, we may remark that, when O'Hara sold the land to Anderson, by deed of the 26th of December, 1820, which was after the judgment had been obtained against Price, under

which his interest in the original south-east corner of the Lewis tract was subsequently sold, and when other and perhaps sharper men had become interested in the property, and claimed for him where he had omitted to claim for himself, he describes the land as " bounded on the east by lands of Risdon H. Price, claimed also by Frederick Bates, or his assigns;" thus confirming the suggestion before made, that an extension of Rector's eastern line to Roy's line was at least claimed to be the common boundary on the east, between the Lewis tract and Mr. Bates' land; and after Gen. Ashley had acquired the title from Anderson, in 1826, he took possession up to the western line of the Lewis tract, and at first limited his inclosure on the east to a continuation of the line of Lindell's fence, who had become the owner of the Rector tract, afterwards moving down to Main street, after Lindell had moved down, upon acquiring a new title to that line.

It is not our duty to decide upon the facts, and we have not referred to them with any such view, but we must look into the evidence, in order to determine upon the propriety and correctness of the instructions given by the court in reference to the location of the land embraced in the deed; and it is for this purpose that we have referred to most of the leading circumstances of the transaction. Whether the evidence given establishes the facts the parties rely upon, in support of their respective positions, was a question for the jury; and if they were correctly instructed as to the law, and there was no error in the reception or rejection of evidence, the judgment must be affirmed.

As we have before remarked, the turning point in the case was, which call should prevail in fixing the position of the O'Hara tract — the call for the south-east corner of the Lewis tract, or the call for the street and Rector's land, taken in connection with the fact that the figure of the piece sold corresponded with the south-west and not with the original southeast corner of the Lewis tract, and also in connection with the subsequent acts of the parties, in taking possession of the land

14—xxi.

in the south-west corner, as they successively succeeded to the title, and the substance of the instruction given was, that if the facts were as indicated, and the jury believed it was the intention of Price to sell and convey the land in the south-west corner of the Lewis tract, they might reject the call for the south-east and locate the land in the south-west corner, and we have no doubt of the correctness of the direction, as applicable to the circumstances of this case.

The rules of law upon this subject are the rules of right reason, adapted to ascertain the real intention of the parties, and are such as are found by experience generally to produce that result. When there are natural objects or artificial monuments upon the ground, fixing the position of the land sold, they must prevail, for they mark upon the earth's surface the specific part sold, and the position of these objects, when found, cannot be controlled by the description of their position given in the deed, by course and distance; and, generally, whenever there is a conflict in the calls of a description, the call for a natural object or an artificial monument prevails over the call for course and distance, for the obvious reason that men are more likely to err as to the course and distance, than as to the natural or artificial objects to which they refer.

The grantor here gives the form and area of the piece of ground he sells, describing the respective courses and distances of its southern, western, northern and eastern lines, and he then designates it as part of a larger tract, and, for the purpose of fixing its position in that tract, calls for the south-east corner of the large piece, a street on the west, and the land of a particular individual on the north. The call for the south-east corner is supposed to conflict with the call for the street and for Rector's land, and is inconsistent with the shape of the ground sold, and with the subsequent acts of the parties, in taking possession of it; and we are, in effect, asked to declare that the call for the south-east corner shall prevail in this case over the call for the other two objects, however strongly the latter call may be corroborated by the other circumstances to

which we have referred. If there be, in truth, a conflict between these calls, we know of no rule of law that requires us to declare that the call for the corner shall prevail as a matter of sheer, rigid law, over the call for the street and the land of Rector. Indeed, the rules of law would seem to require us to declare quite otherwise, for the only object in this description, obvious to the senses, is the street or road. The corner made by the meeting of two imaginary lines of the tract, has, of course, no pretensions to that character, and its true position, so far from being so obvious as to preclude the probability of error on the part of the grantor, in reference to it, has been the stumbling block in the way throughout the whole transaction. We see how much easier it was for the party here to fall into an error as to the true position of the south-east corner of the Lewis tract than as to the road, an artificial object on the ground, obvious to his senses, and the numerous errors in the conveyances used upon this trial, as to the relative position of corners and other objects, is but a confirmation of our own experience, that no errors are more likely to occur in deeds, as mere slips, on the part of the writer, than mistakes of this character. In truth, we think it would be a mere perversion of the rules of law, defeating instead of executing the intention of parties, to declare that the call in this deed for the south-east corner must control every thing else, no matter how conclusive the other parts of the description may be as to the identity of the land sold, and the mistake in the particular description sought to be enforced as the controlling call. The rule that course and distance must give way, in reaching natural or artificial objects, to the objects called for, is not at all applicable to the circumstances of this case. Here is a plat of ground of a definite shape and size sold, and the only question is as to its true position in the larger tract from which it is taken. That position is described, not by course and distance, but by two calls, one for the south-east corner of the larger tract and the other for two other objects, a street or road and an adjacent tract of land ; and so, too, the other rule to which we have

referred, that in descriptive calls natural or artificial objects on the ground, obvious to the senses, are to be preferred to other descriptions less obvious, justifies the rejection of the call for the corner, if it sufficiently appears to be a false description, fallen into either through inadvertence or mistake as to the fact.

Certainly it is not competent in this action, involving the legal title only, to correct a mistake in the deed and then give effect to it as amended, and therefore, if the words " south-east corner" were put into the deed by mistake, and without them there is not sufficient description left to identify the land sold, it would be a case for relief in equity ; but if part of the description is inconsistent with other parts, proceeding either from the mistake of the writer or the error of the grantor, and the remaining part is sufficient to designate the land sold, the remedy is afforded at law by disregarding the false description and giving effect to the other calls ; and we think if the facts here relied upon were made out to the satisfaction of the jury, there was ample description left in this deed, after striking out the call for the corner, to ascertain the land sold. Whether the description upon the diagram, together with its correspondence in shape and size with the south-west, and non-correspondence with the south-east corner of the Lewis tract, would have been sufficient for this purpose, we need not decide, as there is also in the description the call for Third street and Rector's land, which clearly fix its position in the south-west corner of the Lewis tract, where it has been placed by the practical construction of the successive owners of the title.

Indeed, the call for Third street and Rector's land is not only quite sufficient to designate, with certainty, the land intended to be conveyed, but it fixes its position in the south-west corner of the Lewis tract and in the north-west corner of the land that remained to Price after the sale to Rector, with a power of conviction that it is quite impossible to resist. It is obvious that this plat of ground cannot be placed within the Lewis tract so that any part of its northern boundary shall coincide with any part of the southern boundary of the Rector tract,

without, at the same time, making them wholly coincide, and also making the southern and western sides of the plat of ground sold coincide wholly with the respective southern and western sides of the Lewis tract, at its south-west corner; for if the diagram of the O'Hara tract be so placed in the south-west corner of the Lewis tract, and its position be then changed in the least by removing it eastwardly along the southern line of that tract, (and there is no other way in which it can be moved and at the same time be retained within the Lewis tract,) the ground conveyed will lap over upon the Rector tract, (land conveyed by the party himself,) instead of being bounded by it on the south; and so, in like manner, if you place the diagram within the Lewis tract and south of the Rector tract, and carry it westward to the road or street referred to, you fix the ground sold precisely in the same position.

In reference to the defence of the statute of limitations, the instruction given by the court to the jury was, indeed, we are inclined to think, more favorable to the defendant than the law warranted, and he has nothing to complain of here upon that score. If the jury disallowed it, we must presume it was because he failed to satisfy them of the fact, and the correctness of their finding upon the evidence is not a subject to be revised here.

2. We have now done with the instructions, and proceed to what occurred upon the trial as to the admission and exclusion of evidence. The defendant asked a witness whether he had ever heard surveyor Brown say where the south-east corner of Mrs. Ashley's land was, and the court rejected the question, and we see no error here. We assume that the person referred to was the surveyor that made the survey and diagram referred to in Price's deed, and do not mean to decide upon the propriety of the inquiry, if it had been made in such a shape as to elicit from the witness whether he had ever heard Brown say at what point upon the ground he fixed the south-east corner of that survey, although we feel no hesitation in saying that mere hearsay from Mr. Brown that he fixed it either at the old south-

east corner of the Lewis tract, or at the point thirty-six feet west of Main street, unless now corroborated by some monument *then* placed upon the ground, which is not pretended, would have been entitled to very little weight in the settlement of the controversy, where the facts were well understood, no matter how much weight it might in fact have received from a jury in the hurry and confusion of a *nisi prius* trial. It seems that Mr. Brown had placed a stone at the point in Roy's line thirty-six feet west of Main street, at the suggestion of Gen. Ashley, and it may be that Mr. Brown's interpretation of Price's deed to O'Hara fixed the O'Hara land at this new southeast corner of the Lewis tract; and this opinion of Mr. Brown, as to a matter of law, rather than his knowledge of a fact, seems to have been the matter sought, as it most probably would have been the matter elicited by the question asked, and certainly, in this point of view, the question was rightly rejected. At any rate, the record must show us, affirmatively, that the question put ought to have been answered as it was asked, and this is not done here; and we are the less unwilling to allow full effect to this principle here, as we are quite well satisfied that no answer from the witness in relation to what he heard from Mr. Brown, upon this point, ought to have changed the result to which all the circumstances in this case directly led. We do not mean by this decision to express any opinion upon what may, perhaps, be considered the American doctrine as to hearsay evidence in questions of boundary.

It was certainly the duty of the court to direct the jury how the Lewis tract was to be located, and the court afterwards did so, substantially, in the instructions given; and we, of course, *do not sit here to reverse a judgment*, because it is said a witness has given his opinion upon a matter of law, when we see that the opinion given was substantially correct, and could not have prejudiced the party complaining of it.

3. There is nothing in the objection that the trial of the cause took place after the marriage of Mrs. Ashley with Mr. Crittenden, without first making her husband a party. It was his

privilege to be admitted as a co-defendant with his wife, but the plaintiff was not bound to take notice of the marriage, and stay further proceedings in the cause, until he had made the husband a party. What steps it may be proper for a plaintiff to take after judgment, before taking out execution against the wife, is not a question now before us. All we now determine is, that the plaintiff was not bound to bring in the husband, as a party to the record, before the trial, in order to give validity to the proceedings.

All the judges concurring, the judgment is affirmed.