GIBSON, Plaintiff in Error, v. BOGY *et al.*, Defendants in Error.

1. The intention of the parties to a deed, as shown by the entire deed, should govern in its construction; where certain of the words used appear repugnant to the other portions of the deed and to the general intention of the parties, they should be rejected.

2. A call for a monument in a deed, as for a " public road," will be controlled by the other calls therein, if it be apparent that it was inadvertently inserted.

*Error to St. Louis Land Court.*

The facts sufficiently appear in the opinion of the court.

*E. Bates* and *Gibson*, for plaintiff in error.

I. The lot in question was not embraced in the deed from Gamble to Tabor and Collins. The call for the " public road" is the governing call therein.

*Hill, Grover & Hill*, for defendants in error.

I. The deed to Tabor and Collins embraced the land in dispute. (See 2 Greenl. Cruise, 334–5, note; 12 Ill. 38; 29 Maine, 178; 17 Mass. 211; 3 Greenl. 71; 11 Ill. 97; 29 Maine, 120; 1 Ired. 283; 3 Pike, 18.)

RICHARDSON, Judge, delivered the opinion of the court.

This was an action of ejectment to recover the possession of that part of the United States survey No. 1483, which is situated east of a public road now known as Broadway, in the city of St. Louis. The whole survey is a tract of one by forty arpens, confirmed to Joseph Tayon by the act of Congress of the 29th of April, 1816, and surveyed in 1826. Both of the parties claim under Archibald Gamble, who was the owner of the whole tract in 1833. The deed to the plaintiff is dated in 1856, and describes the land conveyed as being the part of survey No. 1483 which lies east of Broadway. The deed to Collins and Tabor, under which the defendant

claims, is dated December 5th, 1838, recorded 13th February, 1839, and the only question in the case is whether this deed embraced the lot in dispute. It recites " that whereas the said Gamble in the month of June, 1836, sold to the said Charles Collins a certain tract or parcel of land containing the quantity of forty arpens, more or less, being in township forty-five north, in range seven east, lying in the common field of St. Louis, being one arpent in front by forty arpens in depth, bounded on the north by lands formerly of Paul Kiercereau, on the *east by the public road*, on the south by a vacant arpent assigned to the St. Louis Public Schools, and on the west by land of owners unknown, being survey No. 1483, as appears by the records of the surveyor general's office, and for the conveyance of which by quit-claim deed he executed his bond to said Collins." Then follows the granting part of the deed in these words: " We, the above named parties of the first part, do hereby, for and in consideration of the sum of ten thousand dollars to us in hand paid by the said party of the second part, sell, assign and convey, and forever quit-claim, by these presents, all our right, title, claim, interest or estate in or to the above described tract of land of one arpent in front by forty arpens in depth."

In the construction of deeds, the intention of the parties must govern as in other cases of contract. If the language is free from ambiguity, the instrument must be construed according to the plain common meaning of the words, but the construction must be on the entire deed, and not merely on any particular part of it; and it is the duty of the courts " to endeavor to find out such a meaning in the words as will best answer the intention of the parties." It is said that the words are not the principal things in a deed, but the intent and design of the parties; and, therefore, where there are any words in a deed that appear repugnant to the other parts of it, and to the general intention of the parties, they will be rejected." (4 Greenl. Cruise, 307.)

Applying these rules to the construction of the deed under consideration, we think it appears that it was the intention

of Mr. Gamble to convey to Collins and Tabor all his interest in the Tayon tract known as survey No. 1483. It is known as a part of the history of St. Louis that the common fields are in a tier of lots adjoining each other, and that they generally have a common front line. Many of them have a front of one arpent, some one and a half, others two or three or four arpens, by a depth of forty arpens; and they are called one, or one and a half, or two, three or four by forty arpent lots, as the case may be. They are also called common field lots, or arpent lots, and are often designated by the name of the confirmee, as the Tayon arpent, or the Tayon tract, or the Tayon common field; and, after they have been surveyed, they are frequently called by the number of the survey, as survey No. 1483. When speaking of these lots in reference to purchases and sales, they are seldom described by their boundaries, but are most generally identified by the name of the confirmee, as the Tayon arpent or common field lot, or by the number of the survey, though other modes of description may be employed in deeds. Parties are not liable to be mistaken as to the subject about which they contract, or as to its general locality, or whether they are treating for the fractional part or the whole of a common field lot, though they may be deceived as to its particular boundaries; and, in construing deeds like the one in this case, the well established rule may be invoked that when the intention of the parties is not otherwise apparent, it may be ascertained by giving greater effect to those things about which men are *least* liable to mistake. (4 Greenl. Cruise, note, 335.)

The recital in this deed designates the land as " *being one arpent in front by forty arpens in depth,*" bounded on the north by lands formerly of Paul Kiercereau, on the east by the public road, on the south by a vacant arpent assigned to the St. Louis Public Schools, and on the west by lands of owners unknown, " *being survey No.* 1483, *as appears by the records of the surveyor general's office* :" and it is described in the granting clause as " the above described tract of land

of one arpent in front by forty arpens in depth." The prominent idea, evidently, in the minds of the parties was a tract of one by forty arpens, being survey No. 1483; not a part of the survey, but the whole of the common field lot. The reference to the " public road" was not made for the purpose of fixing the boundary of a part of the tract, but was erroneously assumed to be the eastern boundary of the whole tract; and, as the thing granted was ascertained by a full and correct description, the deed ought not to be defeated by the addition of a further and false description. (Mayo v. Blount, 1 Ired. 283.) Monuments generally prevail over the other calls in a deed, unless, taking the whole deed together, they are apparently erroneous, when they will be disregarded; (4 Greenl. Cruise, note 338;) and a boundary may be rejected when it is clear that it was inadvertently inserted, and that a tract with different boundaries was intended to be conveyed. (Thatcher v. Howland, 2 Met. 41; Bosworth v. Sturtevant, 2 Cush. 392.) The call " of one arpent in front by forty arpens in depth" describes the whole tract, which is not said to be a part of the survey, but as " being survey No. 1483;" and the reference to the survey by its number and the public office where it is recorded made the survey and the plat thereof part of the deed as effectually as if the courses, distances and objects noted in the survey had been particularly mentioned in the deed. (Davis v. Ranisford, 17 Mass. 211.) The other judges concurring, the judgment will be affirmed.