Kronenberger v. Hoffner et al.

---

DOMINIQUE KRONENBERGER, Respondent, *v.* FREDERICK HOFFNER and BENJAMIN F. HICKMAN, Appellants.

1. *Land and land titles — Monuments, etc., when must prevail over courses and distances.*—Fixed and known monuments called for in a deed, and also points and lines expressly called for, which are fixed and well known, or are capable of being fixed with certainty, must prevail over courses and distances.
2. *Land and land titles — Lines, how ascertained where there are no express calls.*—Where there are no express calls that determine a line with certainty, evidence *aliunde* is admissible to show where the line was actually run to which the deed refers, or to which it must have reference; and its location, so fixed by extrinsic evidence, will control the courses and distances named in the deed or in the survey. Field-notes and plats of the surveyor, with the calls for courses and distances, properly authenticated, can be shown, not to make a line, but as evidence of an existing line, and they must yield to other satisfactory evidence of its true location.

*Appeal from St. Louis Circuit Court.*

*Jones & Hickman*, for appellants.

*Bakewell & Farish*, for respondent.

BLISS, Judge, delivered the opinion of the court.

The controversy arises from a disagreement in regard to a boundary between the plaintiff and defendants, and the plaintiff brings his action for the possession of such portion of the property in dispute as will decide the location of the true line.

In 1853 the St. Louis University laid off a portion of a tract land owned by it into a subdivision called "College Farm," and the plat was duly recorded. The following diagram shows that part of the subdivision that embraces or affects the question of the disputed boundary:

The plaintiff owns lot No. 4, and the defendants lot No. 5, and the dispute involves the location not only of the division line between these lots, but of all the lines running from Bellefontaine road to Orchard street. The defendants claim that these lines were originally run and platted at right angles with Bellefontaine road, according to the black lines in the diagram, and should not now be disturbed, while the plaintiff, having had this part of the subdivision resurveyed by the county surveyor, claims

that they can not run at right angles with this road, but must run as indicated by the dotted lines upon the diagram, varying between five and six degrees ; that the true line cuts the house of defendants ; and the petition is for that part of the house south of the intersection of the line.

The plaintiff, upon the trial, submitted in evidence the deed of the university to R. W. Wells (dated June 18, 1854) of said lot No. 4, by the following description : "Lot No. 4 in the subdivision of said tract, as per plat recorded in the recorder's office of St. Louis county, and described as follows : beginning at a point in the western line of the Bellefontaine road, distant 360 feet 9 inches southwardly from the northern line of the tract; thence westwardly at right angles to the said Bellefontaine road, 436 feet along the southern line of lot No. 5 to Orchard street; thence southwardly along the eastern line of Orchard street 200 feet to a point; thence eastwardly at right angles to said Orchard street 436 feet to the Bellefontaine road; thence northwardly along the western line of the Bellefontaine road 200 feet to the point of beginning—said lot No. 4 containing two acres." Also, the deed of the sheriff, upon partition among the heirs of Judge Wells, of said lot 4, to C. Garrell, made in June, 1866, and described it as "lot No. 4 of the College Farm, containing two and one-tenth acres, bounded east by the Bellefontaine road, west by Orchard street, south by lot No. 3, and north by lot No. 5 ;" also a deed of the lot, of April 10, 1867, from Garrell to the plaintiff, describing it as "lot No. 4 of the College Farm, a plat of which is on record in the office of the recorder of deeds for St. Louis county, said lot containing two and one-tenth acres, more or less, and is bounded east by the Bellefontaine road, west by Orchard street, south by lot No. 3 of said College Farm, and north by lot No. 5 of said College Farm, and is part of the real estate acquired by the party of the first part by deed recorded," etc.

The plaintiff introduced as a witness the county surveyor, Mr. J. Pitzman, who testified that in May, 1867, he surveyed the lot for the plaintiff, and made a plat; that he placed the northeast corner of the lot 360 feet 9 inches from O'Fallon's corner,

because " that is the distance called for in the plat of the College Farm, and also in the title deeds shown me by Mr. Kronenberger. I was governed by the stated distance alone." Considered himself bound by the stated distance; introduced his plat and said that it included a portion of Mr. Hickman's house in lot 4; and, on cross-examination, explained further that he had before surveyed lot No. 1 for the plaintiff; that upon the recorded plat of College Farm, the lines between the several lots, 1 to 6, seem to be at right angles with Bellefontaine road and Orchard street; that there was a fixed monument at the southwest corner of lot 6 and the northwest corner of lot 5; that the line of division fixed by him was not at right angles with the road, but diverged as much as four degrees; that a perpendicular from Orchard street, 161 feet 3 inches from the northwest corner of lot 5, would strike the Bellefontaine road a considerable distance south of the northeast corner of lot 4, as he placed it, and might clear Hickman's house. He further testified that there was a fence on the south side of College avenue, and that by measuring from O'Fallon's corner on Bellefontaine road, and locating the fronts of the several lots as he has done, there would be some thirty feet surplus on College avenue; and says that when he first surveyed lot 1 for the plaintiff there was a fence between lots 1 and 2, striking Bellefontaine road at right angles, and considerably south of where he located the line.

In the foregoing diagram, where the lines in the plat of Mr. Pitzman varied from those of the original plat, as claimed by the defendants, they are indicated by dotted lines. The defendants introduced H. W. Leffingwell as a witness, who testified that he was agent for the university in the sale of the lots; that Cozzens and O'Flaherty made the survey and map (exhibiting it); said it was the original map used at the sale; that the first sale was on the 11th of May, 1853, when he sold lots 1, 5, and 6; that there were no improvements on lot 4, but were on lots 5 and 6; that there was a fence immediately south of the house on lot 5, running to Bellefontaine road, that was pointed out as the south boundary of lot 5; that " the line between lots numbered

4 and 5 ran south of the house, and it was so stated to the purchasers at the time."

W. H. Cozzens, also, was called as a witness, and testified that he and his partner surveyed and subdivided the College Farm; that he personally directed the mode of subdivision; that the corners definitely fixed were the northeast corner on the Bellefontaine road, the next corner west (now the northeast corner of lot 6), and the southwest corner of what is now lot 6; also the line of Bellefontaine road with its angle in lot 5. After he gave the directions the survey was made by his partner, Mr. O'Flaherty. "I know where the line of division between lots 4 and 5 was. It ran just south of the house. There was, at the date of the sale, in May, 1853, a fence just south of the house in lot No. 5, which fence was on the line between 4 and 5. It was so announced at the sale, and so understood. I attended the sale. This large map was then in Mr. Leffingwell's hands. The sale was on the premises. All the improvements were announced to be in lots 5 and 6. I gave directions so as to have the house on lot 5, and it was so surveyed." The witness testifies to a recent survey at the instance of the defendants; goes into detail of his operations, his starting points, etc., to fix the location of the line in dispute; is positive that the line, according to all the calls of the deeds, should be south of Hickman's house, and at right angles with the road; says that the mistake was in putting down in the original plats the length of the front line of lot 6—it should have been over thirty feet longer; his recent survey makes it thirty-five feet longer than on the maps, though the proportions of the platting are correct; and gives his opinion as to what calls in the deed should control.

Mr. Wells, son of R. W. Wells, testified that he was present at the partition sale, and that the sheriff announced that all the improvements were on lots 5 and 6. The defendants offered in evidence the deed of the St. Louis University to R. W. Wells, dated May 12, 1853, of lots 5 and 6, describing them as in the subdivision of College Farm tract, "as per plat recorded," bounded, etc., "beginning at a point in the western line of the Bellefontaine road, 360 feet 9 inches southwardly from the north-

13—VOL. XLIV.

ern line of the tract; thence westwardly, at right angles to said Bellefontaine road, 436 feet to Orchard street," etc., following the undisputed lines, to the northwest corner of lot 5, and thence around to the place of beginning, "said lots 5 and 6 containing two acres and sixty-seven hundredths." At the partition sale, before referred to, these lots were sold and conveyed to defendant Hickman and J. W. Sutherland, and described as containing two and sixty-seven one-hundredth acres, bounded east by the Bellefontaine road, west part by Orchard street, south by lot No. 4, and north and northwest by O'Fallon's lands.

The case having been submitted to the court, it declared the law to be " that in case of a conflict concerning the true location of a certain line between adjoining proprietors, both claiming under the same grantor, in the absence of natural and artificial monuments given in the deeds—there being a conflict between the distances and corners specified in the deeds—the area mentioned in the deeds as the area conveyed to each grantee may be considered as evidence in determining the true location of the line in dispute." After this declaration of law, the court found for the plaintiff and gave him judgment, which was affirmed at general term, and the case is brought here by appeal.

Certain facts are indisputably established:

1. The University, in preparing to sell their land, caused it to be surveyed, platted, and the map recorded.

2. The only fixed monuments to start from in making the survey were found where are now the northeast and northwest corners of lot 6 and the northwest corner of lot 5; but the surveyors established as well the lines of the Bellefontaine road, including the angle in the road laid down in front of lot 5, and of Orchard street, and there is no dispute as to the locality of those lines and of that angle.

3. They surveyed the dividing line of lots 4 and 5, being the line in dispute, but did not fix any permanent monument to define its location.

4. Upon the map the dividing lines of all the lots are apparently at right angles with Bellefontaine road, and all, except the one between 5 and 6, also at right angles with Orchard street.

The map also shows that the point of intersection of the dividing line of lots 4 and 5 with the west line of Bellefontaine road is 34 feet south of the angle in the road line, and it also shows the west line of lot 1 to be 52 2-12 feet long, instead of 43 11-12 as made by plaintiff's survey.

5. But the map shows an inconsistency in the distance from the starting point, to-wit: the northeast corner of lot 6, to this angle and this point of intersection, as compared with the west line of lot 5, which also starts from a fixed monument. Either the dividing line of lots 4 and 5 is not at right angles with the streets, or the west line of lot 5 is too long, or the east line of lots 5 and 6 is too short. Upon either of the former two hypotheses, this dividing line should strike the line of the Bellefontaine road at its angle and intersect the house of Hickman on lot 5. Upon the latter it strikes the road line as laid upon the map, and runs south of the house.

6. The first deed executed to Wells was offered in evidence by defendants, and was for lots 5 and 6, and it calls for the following fixed monuments and lines: 1, the west line of the Bellefontaine road; 2, the northeast corner of lot 6; 3, the east line of Orchard street; and 4, the northwest corner of lot 5. The deed itself does not name any monument by which we can find the exact locality of the disputed line, but we are compelled to locate it from the line it intersects, the distance of the points of intersection from fixed monuments, from its bearing, and by other legal evidence.

7. When the survey was made, the disputed line was actually run south of Hickman's house and along a fence, where he now claims the line to be; and at the sale by the University, and also at the sale upon partition of the Wells estate, it was stated to the purchaser that this line ran south of Hickman's house, and that the improvements were all on lots 5 and 6.

8. All the deeds describe the disputed line substantially alike when they describe it at all, and some of them expressly refer to the recorded plat.

Where the facts are undisputed, the decision of the court, if wrong, is error of law, whatever may be the formal declarations

of law, or whether there be any. If the decision of the Circuit Court can be reconciled with the facts as above stated, and the law as applied to them, it should stand; otherwise it should be reversed. The declaration of law given does not seem to meet the whole case, and it does not become important to consider it.

The rules of law applicable to the class of questions raised by this record have been long settled. It has never been disputed that fixed and known monuments called for in a deed must prevail over courses and distances. Under the same rule should be classed points and lines expressly called for, which are fixed and well known, or are capable of being fixed with certainty. Keeping in view the object of a description—to enable those interested to apply the deed to its subject matter, to ascertain the lines and angles as actually run and established—other rules are equally reasonable and are recognized as well.

Where there are no express calls that determine a line with certainty, evidence *aliunde* is admissible to show where the line was actually run to which the deed refers, or to which it must have reference; and its location, so fixed by extrinsic evidence, will control the courses and distances named in the deed or in the survey. The right to prove the true line of the survey to which the deed refers, and which it follows, does not depend upon the rules applicable to ambiguities in written instruments, though it has a strong analogy to latent ambiguities. It is not a question of construction, but a question of fact. There may be no ambiguity, and yet it may be impossible to locate the land without extrinsic information. If it refers to lines and surveys, the lines and angles as actually run and established must be found, and by the best evidence attainable. If the deed calls for known monuments and abuttals, they must be found, and, if destroyed, their location must be proved. If there are no monuments, or they can not be found, any other legal proof of where the line was actually marked upon the ground is admissible. Field-notes and plats of the surveyor, with the calls for courses and distances, properly authenticated, can be shown, not to make a line, but as evidence of an existing line, and they must yield to other satisfactory evidence of its true location. Among the multitude of

authorities are Opdyke v. Stevens, 4 Dutch., N. J., 84; Conn *et al.* v. Penn *et al.*, 1 Pet. 511; Ogdon v. Paterfield, 34 Penn. St. 191; Yamkin v. Cowan, *id.* 198.)

Some of these rules were evidently disregarded by the court. It is clearly proved that the dividing line of lots 4 and 5 was actually run south of Hickman's house. This fact is established by several witnesses, and is undisputed. There are other undisputed facts that are only consistent with this. In the plat of the original survey under which the lots were sold, the line runs south of the house, and intersects the east line of Bellefontaine road 34 feet south of the angle in the line. This line and this angle are established; and the plaintiff's claims must necessarily assume that this distance from the angle is a mistake, and that, instead of running 34 feet south of it, it must have struck the angle, or come within one or two feet of it. The assumption of the plaintiff contradicts the following established facts: *First*, that the dividing line was at right angles with the road, as described in all the deeds and on the plat; *second*, that it intersected Bellefontaine road south of the angle as shown by the plat; *third*, that it ran south of the house; and *fourth*, its length. And the claim of defendants contradicts the fact that the point of intersection on Bellefontaine road is 360 feet 9 inches south of the northeast corner of lot 6, as named in some of the deeds and marked upon the plat, and is inconsistent with the quantity of land called for. The claim of plaintiff also leaves a strip of land adjoining College avenue undisposed of, while that of the defendants embraces the whole in the several lots, according to the plat of the survey. That there was a mistake somewhere is certain. By locating this mistake upon the line from the northeast corner of lot 6 to the angles of the road, and supposing that it occurred in the measurement, or in transferring the measure to the plat, we reconcile everything—the bearings or corners are right, the other distances are right; all the land is embraced, and the disputed line runs where it is clearly proved to have been originally established.

The carelessness of the surveyor, shown by his own map, in omitting half a chain in his first line, and in his false computa-

tions of quantity, only adds another illustration to the necessity of some more certain mode of finding the established boundaries of our possessions than reliance upon the description of careless surveyors, or upon the perfection of instruments, the best of which are imperfect.

The court could only have come to its conclusion by holding that all the courses, distances, and the actual location of the disputed line must yield to the call for distance. from the angles of the road to O'Fallon's corner, and to the call for quantity. In this it committed an error. We do not say that the declaration of law upon the record is erroneous, but it did not embrace all the principles that must have inspired the action of the court. The actual location of boundary lines is disregarded in the attempt to readjust them.

The rules to which we have referred in adjusting disputed boundaries are not inflexible. They are considered as best adapted to the end, which is the location -of the actual original boundary line as run upon the land. Distances may be rejected, courses may be rejected, and sometimes even monuments, which, unless under unusual circumstances, are the best evidence attainable. In the elaborate case of Evans v. Green, 21 Mo. 170, this court rejected a distinct call for the location of a purchase in the southeast corner of a tract of land, when, from possession and other evidence, it was evidently intended to be in the southwest corner. In Gibson v. Bogy, 28 Mo. 478, a call for a boundary upon "the public road" was rejected as inconsistent with the other parts of the deed, and contradicting the intentions of the parties.

There can be no doubt whatever as to the intention of the university in selling those lands to Judge Wells, nor as to the intention of the conveyances in the partition. It is established beyond any dispute that this controverted line was intended to run, *and was actually run*, south of Hickman's house. It therefore cuts off the plaintiff from any claim whatever to any part of the house.

Upon concurrence of the other judges, the judgment is reversed and cause remanded.