UNION RAILWAY AND TRANSIT COMPANY *v.* JOHN W. SKIN-
NER AND WILLIAM C. BUCHANAN, Appellants.

June 8, 1880.

1. Where one sells a lot by its number as laid out in a recorded plat, and in
giving a further description misstates the boundary line thereof, the
monument will prevail and the further false description be rejected.

2. Where one in good faith, believing himself to be the owner of land not in
a condition to be occupied, pays the taxes thereon for years, and when
the property is condemned for public use the real owner comes forward
and claims the proceeds, equity will regard the payment of the taxes as
having been made for the owner, and will charge the proceeds of the con-
demnation with the taxes thus paid in favor of the party paying them.

APPEAL from the St. Louis Circuit Court, WICK-
HAM, J.

*Reversed, and judgment.*

T. K. SKINKER, for Buchanan : A general description by
name or number will override a more particular description
by metes and bounds. — *Rutherford* v. *Tracy*, 48 Mo. 325 ;
*Lodge* v. *Lee*, 6 Cranch, 237 ; *Keith* v. *Reynolds*, 3 Greenl.
393 ; *Jackson* v. *Barringer*, 15 Johns. 471 ; *Cooley* v. *War-
ren*, 53 Mo. 166. Grants are to be most strongly construed
in favor of the grantees. If there is a conflict in the descrip-
tive words, the construction most favorable to the grantee
will be adopted. — *Evans* v. *Temple*, 35 Mo. 494 ; *Vance*
v. *Fore*, 24 Clarke, 435 ; *Hall* v. *Gittsing*, 2 Har. 112 ;
*Wilson* v. *Inloes*, 6 Gill, 121. The intention of the par-
ties as gathered from the whole instrument, and not
particular words, must govern. — *Gibson* v. *Bogy*, 28 Mo.
478 ; *Jamison* v. *Fopiano*, 48 Mo. 194. When there is any
ambiguity in or doubt about the meaning of a deed or other
instrument affecting land, in order to arrive at the true intent
of the parties, the court ought to take into consideration the
circumstances surrounding them and the condition of the

land at the time the instrument was executed. — *Hardy* v. *Matthews*, 32 Mo. 121; *King* v. *Fink*, 51 Mo. 209; *Edwards* v. *Smith*, 63 Mo. 119; *Amonett* v. *Montague*, 63 Mo. 201. Where one, in good faith, by mistake and with no purpose of volunteering, pays money which enures to the benefit of another, and which by reason of defect of title becomes wholly lost to him, he is entitled in equity to maintain an action against the other, and if it went to discharge a lien upon land, he is entitled to be substituted to the right of the lien-holder. — *Vallé's Heirs* v. *Fleming's Heirs*, 29 Mo. 152; *McLean* v. *Martin*, 45 Mo. 393; *Metcalf* v. *Smith*, 40 Mo. 576; *Jones* v. *Manley*, 58 Mo. 563; *Sims* v. *Gray*, 66 Mo. 613.

M. L. GRAY and J. M. HOLMES, for Skinner: A general description, designed to identify the land conveyed, is to be always limited by a particular and accurate description following it. — *Biddle* v. *Vandeventer*, 26 Mo. 500; *Chaplin* v. *Grodes*, 7 Watts, 410; *Whiting* v. *Dewey*, 15 Pick. 428; *Winn* v. *Cabot*, 18 Pick. 553. Where there is a false call in a deed, even though it be for a monument, it can be rejected if the description of the land conveyed will be complete without it. — *Jamison* v. *Fopiano*, 48 Mo. 195; *Gibson* v. *Bogy*, 28 Mo. 478; *Shewalter* v. *Pirner*, 55 Mo. 219; *Thatcher* v. *Howland*, 2 Metc. 41; *Tyler* v. *Hammond*, 11 Pick. 211–213; *Birmingham* v. *Anderson*, 48 Pa. St. 258; *Biddle* v. *Vandeventer*, 26 Mo. 500.

BAKEWELL, J., delivered the opinion of the court.

This case is submitted by counsel for the opposing parties, Skinner and Buchanan, on the following statement, in which counsel on either side concur: —

This cause comes before the court on opposing appeals by the defendants, Buchanan and Skinner, from an order directing the distribution of a fund in court. This fund grew out of the condemnation of certain land by the Union Railway

and Transit Company, for depot purposes. The land having been condemned, the sum of $604 was paid into court, subject to the conflicting claims of the defendants, each of whom claimed to be the owner of the land and entitled to the whole of the fund. Pending litigation, this sum was deposited in bank on interest, and with the interest amounted, on the day when the order of distribution was made, to $723.25. Both defendants filed motions or petitions for payment, and the case was submitted to the court on these pleadings and an agreed statement of facts.

The court found that Buchanan was the owner in fee of one-third of the land, and Skinner was the owner in fee of the other two-thirds, and directed the fund to be divided and paid out accordingly, except that Buchanan, having paid the taxes on the whole land for nearly twenty years, was allowed out of Skinner's two-thirds, and in addition to his one-third share of the whole, two-thirds of what he had so paid, with interest.

On a further motion by Skinner, this order was modified so as to allow Buchanan only for the taxes he had paid within five years next previous to the decree of condemnation.

The land condemned is described as follows : —

A lot commencing on the northern line of Spruce Street, in said city of St. Louis, at a point distant three hundred. and thirty (330) feet west of the western line of Sixteenth (16th) Street ; thence running westwardly on said northern line of Spruce Street twelve (12) feet ; thence northwardly and parallel with the eastern line of Tayon Avenue one hundred and fifty (150) feet, more or less, to the southern line of an alley ; thence eastwardly along said southern line of said alley twenty-two (22) feet to a point distant three hundred and thirty (330) feet west of the west line of Sixteenth Street ; thence southwardly and parallel with Sixteenth Street one hundred and fifty (150) feet to the place of beginning.

The following plat represents the lot condemned, with its surroundings : —

The agreed statement of facts is as follows : —

For the purpose of enabling the court to ascertain the ownership of the fund heretofore paid into court by the Union Railway and Transit Company, as the purchase-money for a parcel of land in the petition in this case described, and in controversy between defendants, William C. Buchanan and John W. Skinner, it is agreed between the said defendants that the following are the facts : —

In the year 1832 the commissioners appointed to make partition of the estate of Auguste Chouteau sold to one

Thomas Ingram a lot known as " Red Ink Lot 3," being part of the tract known as " Chouteau's Mill Tract," and conveyed the same by a deed which called for " the middle of the creek in its natural channel when the pond is exhausted " as the western boundary of said lot, and Sarpy or Fourteenth Street as the eastern.

In the year 1836 said lot was owned in fee by John P. Reily and Alfred Skinner, who had purchased of Ingram, and held the same as tenants in common, Reily owning an undivided two-thirds and Skinner an undivided one-third. In that year Reily laid off and recorded a plat of an addition, designated " Reily's Addition to the city of St. Louis," a copy of which, with the description and dedication, are herewith filed, and made part of this statement.    Alfred Skinner, though not joining in this dedication, subsequently ratified and approved it, and became bound thereby.

In 1838, Reily by deed duly recorded, conveyed to Gamble, as trustee for Dillon, a part of this addition by the following description : " The undivided two-thirds of all the lots in Reily's Addition to the city of St. Louis which have not been sold and conveyed by said Reily before the date of this deed."    Among the lots which had not been previously sold and conveyed were those designated on said plat 60, 61, and 62.

These lots were subsequently sold and conveyed by said trustee, the deed describing them as lots 60, 61, and 62 of Reily's Addition to the city of St. Louis, and conveying a two-thirds interest in them.

Defendant Buchanan has acquired the title so conveyed by said trustee through a series of conveyances, all duly recorded, and this is his only title to an undivided two-thirds of the land in controversy.    At the date of the making of the deed to Ingram and the plat of Reily's Addition, and up to the year 1851, the western part of said lots 60, 61, and 62, and all of the land in " Red Ink Lot 3," west of a line drawn from north to south, and running parallel to and distant

westwardly 330 feet from Skinner or Sixteenth Street (called for convenience the 330-foot line) was covered with the waters of the Chouteau Mill Pond, otherwise known as Mill Creek, to a great depth, and the middle channel of the creek, as called for in the deed to Ingram, was never surveyed nor ascertained until the pond was drained in 1851.

The property in controversy remained unoccupied, and, owing to its natural situation, was unfit for use up to the time when the decree of condemnation was entered in this case without being filled.

At various times between the years 1860 and 1870, and long after the death of John P. Reily, his heirs conveyed to defendant Skinner whatever title they may have had to all the land lying east of the middle channel of the creek and west of the 330 line. The land in controversy lies within these limits and between the southern line of lot 60 and the northern line of lot 62, as laid down on said plat, as they would be if projected to the middle channel of the creek.

It is agreed that if the western boundary of lots 60, 61, and 62 was the middle channel of the creek, as called for in the deed from the commissioners to Ingram, then defendant Buchanan has good title to the undivided two-thirds of the property, and is entitled to two-thirds of the fund in controversy ; and if the true western boundary of said lots was the 330-foot line, then defendant Skinner has good title to the undivided two-thirds, and is entitled to two-thirds of the fund in controversy, subject, however, to defendant Buchanan's claim for taxes paid. The title to the remaining one-third involves an additional question.

In the year 1842, by deed duly recorded, Alfred Skinner conveyed to Tiffany and Shepley, trustees for Reily, his undivided one-third interest in said lots 60, 61, and 62. The deed called for the centre of the channel of the Mill Creek as the western boundary of the lots.

Defendant Buchanan claims title, through a chain of conveyances regular on their face and duly recorded, under this deed, to this undivided one-third interest, on the theory that

the call for the channel of the creek as the western boundary of the lots is conclusive against defendant Skinner, and also on the theory on which he claims the other two-thirds, that the channel was the true boundary under the Reily dedication.

In the year 1859, Alfred Skinner, for a nominal consideration, executed a deed conveying to defendant Skinner a tract of land described as follows: "An undivided third part of a tract bounded east by Reily's Addition, north by a line parallel with Clark Avenue and 150 feet south thereof, west by the middle of the natural channel of the creek of Chouteau's Pond as it existed when said Alfred Skinner acquired said land, south by the south line of lot 3 of Auguste Chouteau's estate." Defendant Skinner claims to have derived title to one-third of the lot in controversy through this deed on the theory that the true western boundary of lots 60, 61, and 62 was the 330-foot line, and that nothing west of that line passed by the deed from Alfred Skinner to Tiffany and Shepley. It is conceded that if the channel was the true western boundary, or if the call for the channel as the western boundary in the deed from Alfred Skinner to Tiffany and Shepley is conclusive, then defendant Buchanan has good title to the one-third interest in question; but if the 330-foot line was the true western boundary, and nothing west thereof passed by said deed, then defendant Skinner has good title to this interest.

The question of possession is not involved in this case, but both defendants rely on their paper title exclusively, except that defendant Buchanan claims that if the court shall find against him on either branch of his title he shall be allowed out of the fund in court for taxes.

From the date of his purchase in 1858, defendant Buchanan has regularly paid the taxes upon the property in controversy. Until the institution of the present proceedings for condemnation he never heard that there was any adverse claim upon said property, but always believed that he was the exclusive owner in fee of the whole of it. During

the whole period the deeds through which he claims were of
record, and the property was assessed in his name.

Defendant Skinner knew this, and knew that the taxes
were regularly paid, and never acquainted defendant Bu-
chanan with the fact that he claimed to own said lot, although
defendant Buchanan has resided in the city of St. Louis
during the whole period. The title under which Skinner
claims was of record during the whole period.

The taxes so paid are as follows : —

| | | |
|---|---|---|
| For the year 1856 | | $8 70 |
| " " 1858 | | 4 09 |
| " " 1859 | | 8 45 |
| " " 1860 | | 8 75 |
| " " 1861 | | 6 54 |
| " " 1862 | | 5 00 |
| " " 1863 | | 6 29 |
| " " 1864 | | 7 01 |
| " " 1865 | | 6 44 |
| " " 1866 | | 7 38 |
| " " 1867 | | 6 20 |
| " " 1868 | | 5 99 |
| " " 1869 | | 11 59 |
| " " 1870 | | 12 01 |
| " " 1871 | | 9 47 |
| " " 1872 | | 9 17 |
| " " 1873 | | 9 77 |
| " " 1874 | | 8 75 |
| Total | | $141 60 |

The Reily's Addition spoken of in this statement is the
same addition as was mentioned in the Supreme Court in the
case of *Primm* v. *Walker*, 38 Mo. 94.

At the time that Reily's Addition was laid out, the eighty-
foot street west of Rene Paul's lot No. 7 of the first series
was dedicated, but was not opened or improved.

Accompanying the agreed statement is a plat of Reily's
Addition to St. Louis, with a dedication in these words : —

"Reily's survey is the tract of land sold by the commissioners of Chouteau's estate as a part of his mill tract, to Thomas Ingram, and is bound north by Clark Street, east by Sarpy, south by Hardage Lane, west by a part of the pond, or continuation of an eighty-foot street west of Rene Paul's lot No. 7 of the first series. It contains 700 feet on Sarpy Avenue, and 1,150 feet on Clark Street.

A plat of the Chouteau partition, made part of the record, is as follows : —

The continuation of the 80-foot street west of Paul's lot No. 7, which is called for in the plat of Reily's Addition as the western boundary of that addition, has been indicated by dotted lines across "red ink lot No. 3," in which the lots 60, 61, and 62 lie.

If these lots 60, 61, and 62 extended to the middle channel of the creek, the whole title to the lot condemned was confessedly in Buchanan, and he should have the whole fund in dispute.

It is true that the dedication of this addition states that it is the tract sold by the Chouteau commissioners to Ingram ; but that it was not intended to embrace the whole of that tract is clear. Its western boundary is declared to be the continuation of what is now Seventeenth Street, and it is said to run west 1,150 feet on Clark Avenue from Sarpy Avenue, now Fourteenth Street. The lots 5, 6, and 7, of the Pauls and Smith, are each extended five chains, or 330 feet, on Clark Avenue ; there are three intermediate eighty-foot streets. This gives the exact distance called for in the plat, 1,150 feet, making the west line of Seventeenth Street the western boundary of Reily's Addition. It is evident, we think, that the plat of Reily's Addition was intended to include not the whole of the Ingram tract, the western part of which was then in Chouteau's Lake, but the portion of it contained in the parallelogram, of which the western line was parallel with Fourteenth Street and 1,150 feet west of that street.

Alfred Skinner, in his deed of trust to Reily's trustees, conveyed lots 60, 61, and 62 by their numbers, intending obviously to convey those lots of the addition. He mentions the channel of the creek as the western boundary of the lots. But it was not their western boundary. The lots are properly designated by their numbers ; and when that is the case, the legal inference is that the owner conveyed the lot and attempted to give a more particular description by the courses. In this he failed. The designation of the lot by

numbers must be regarded as the prominent object, and if there is uncertainty, the monument should prevail. *Rutherford* v. *Tracey*, 48 Mo. 329. The false additional description should be rejected. A call for a road may be controlled by the other calls. 28 Mo. 478. Here the pond was no fixed boundary. Its channel could not be determined till the pond was drained, which might never be ; and the boundary by the pond, if accepted, would mean the channel as it should be found to be when, if ever, the pond should be drained. *Mincke* v. *Skinner*, 44 Mo. 92. The call for distance in the Skinner deed is 330 feet west from Skinner, on Sixteenth Street, which corresponds with the western line of Eulalie Paul's lot 7, which is the eastern line of Seventeenth Street and the western line of Reily's Addition.

The land in this case was unoccupied, and was not capable of occupation. Buchanan paid the taxes during the whole period, supposing in good faith that he owned the land. If these taxes had not been paid by him, all interest of Skinner in this property would long ago have been forfeited to the State. Buchanan was not intentionally and willingly paying the indebtedness of Skinner, but was in good faith, by mistake, paying money that preserved to Skinner this property, which, by reason of defect of title, has now become wholly lost to Buchanan. The taxes were a lien upon the property itself. We think that, under the ruling in *Vallé's Heirs* v. *Fleming's Heirs*, 29 Mo. 152, and in *Schaefer* v. *Causey*, 8 Mo. App. 142, these payments ought to be treated as made by the authority, or at least with the concurrence of Skinner.

The judgment of the Circuit Court must therefore be reversed, and judgment will be entered here in accordance with this opinion : that Skinner is entitled to the two-thirds interest, and also to the one-third interest — that is, to the whole fund, less the total amount paid by Buchanan for taxes, and interest on this amount thus paid. All the judges concur.