†PEURRUNG BROS. & CO. v. COMPTON, AULT & CO.

**1. NEED NOT CONTAIN NAMES OR LOCALITY OF MANUFACTURER.**
To constitute a device or design a trade mark, it is not necessary that it should contain the name of the manufacturer, and his place of business and similar statements.

**2. INJUNCTION TO STOP RESALE WILL ISSUE AGAINST BUYER OF PIRATED GOODS.**
Injunction against selling goods with a piratical trade mark will issue against a buyer without notice. He obtains no right there being no market overt in this country.

†This case in supreme court was dismissed by consent of parties, October 31, 1893.

On appeal from the Court of Common Pleas of Hamilton county.

SWING, J.

This was an action brought in the court of common pleas by the plaintiffs against the defendants for an injunction.

The petition alleged that the plaintiffs were wholesale dealers and manufacturers of matches of a certain line, grade and quality, which matches were sold in certain cases, boxes and packages, labeled and stamped with a certain device and trade mark; that said stamp or device so stamped on said boxes is, "The Acorn Parlor Match." Plaintiffs say they are the originators of the said "The Acorn Parlor Match" trade mark, and are the exclusive owners thereof; that they have given much time, labor and pains to the maintaining of said matches which they have sold under said trade mark; that said trade mark has acquired a great reputation by reason of their efforts, and that it has been a source of great profit to them.

That defendants, well knowing plaintiffs' rights to said trade mark, manufactured or in some way became possessed of a certain lot of said matches, and have sold and are selling the same, thereby greatly diminishing plaintiffs' profits; that the same is in fraud of plaintiffs' rights and to their damage; wherefore, plaintiffs pray for a restraining order, restraining defendants from selling matches under plaintiffs' trade mark.

The answer of the defendants was in effect a general denial.

Upon the filing of the petition in the court of common pleas a restraining order was issued which afterwards was, upon motion, dissolved, from which judgment an appeal was prosecuted in this court.

Upon the trial in this court the following facts were shown to exist:

The defendants had been selling up to the time of the bringing of this suit, and now have in their possession a large quantity of matches marked as set out in plaintiffs' petition; that is, they are a square match with brown colored heads, put up in brown pasteboard boxes, marked in fancy black letters peculiarly arranged on the back of the box, "The Acorn Parlor. Match." The defendants bought these goods of the Diamond Match Co., of St. Louis, Mo., from persons who had obtained them directly from the Lebanon Match Co., of Lebanon, Penn.

About December 1, 1889, the plaintiffs originated and commenced to sell and introduce to the public matches, as heretofore described; that said matches were made for the plaintiffs by the Lebanon Match Co., under their order and direction; that they were the owners of the brand and trade mark, if it was a trade mark; that matches had not been hitherto sold in boxes similarly marked.

The plaintiffs had expended considerable money in introducing said brand of matches, and their trade was a profitable one; that the sale of these matches by defendants would be injurious to them; that these matches, in possession of the defendants, were manufactured by the Lebanon Match Co. without plaintiffs' knowledge or consent, and so sold to the Diamond Match Co., of St. Louis, who sold them to defendants.

Two reasons were urged by defendants why the plaintiffs should not have the relief asked:

First—They claimed to have purchased the matches in the open market and from the agents of the plaintiffs.

Second—That what plaintiffs claim to be a trade-mark is not a trade-mark, inasmuch as it does not indicate the true ownership or origin of the goods.

As to the claim that the goods were purchased in the open market: We have no such thing as market overt in this country. The facts show clearly that the matches were not purchased from the Lebanon Match Co. acting in the sale of the matches as the agent of the plaintiffs, therefore, if what was sold by the Lebanon Match Co. was the property of the plaintiffs, and was wrongfully sold, the purchaser could not acquire a good title to the property as against the plaintiffs. See Newmark on Sales, secs. 183-4-5.

The only other question in the case is, is the thing claimed to be a trade-mark, a trade-mark? A majority of the court is of the opinion that it is.

What is a trade-mark?

Bouvier says it is "A symbol, emblem or mark which a tradesman puts upon or wraps or attaches in some way to the goods he manufactures or has caused to be manufactured."

Upton says, p. 9, "A trade mark is a name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant, in order to designate that he manufactures and sells "

Browne says, at sec. 80, that an exact definition is not without difficulty, and then proceeds at length to review the adjudicated cases.

At sec. 144, Browne says, speaking of indication of origin or ownership, "This is a phrase that of late years has been the source of much perplexity, simply because not understood in its legal acceptation;" and at the following section says, "That question can be intelligently answered only after the examination and collection of many adjudications."

It is this necessary element of a trade-mark that defendants' counsel claimed in argument did not exist in this case, that the device or design, "The Acorn Parlor Match," in the form and manner produced, does not show where it is produced, or by whom it is produced. This is undoubtedly true. as to a stranger; that is, to one never having seen such a case of matches, it undoubtedly would not show to him that the maker or seller of "The Acorn Parlor Match" was Peurrung, Bros. & Co., and that they carried on their business in the city of Cincinnati, Ohio; but to the trade or to persons who deal in matches—if the facts be as plaintiffs allege, and which we find to be true, viz.: that these plaintiffs originated and designed this brand, introduced and sold it to the trade, and no other parties had ever sold it—these facts would show the origin and ownership; and this is what we think is meant by indicating origin or ownership.

If name of manufacturer, place of business, and similar exact statements are to accompany the device, no symbol or sign alone, such as we see every day, such as "Ivory Soap," "Lenox," "Royal Baking Powder," and many others would have any value as a trade-mark, and the very object of a trade-mark, that is, a symbol, sign or device, would be defeated. But, as we understand it, the books are full of adjudicated cases where similar designs have been held to be trademarks.

See 44 Mo. 188, where "Charter Oak" alone was held to be a trade mark when placed on stoves. 81 Ky. 73. 18 Official Gazette, patent office, 923 and 1277.

See, also, for a full discussion and review of the authorities, 2nd Ch. Div. p. 441.

From our foregoing opinion, it follows that the plaintiffs are entitled to the relief prayed for, and a decree will be entered accordingly.

Judge Cox dissents.

Roelker & Jelke, for plaintiffs.

Paxton & Warrington, for defendants.