Swing, J.
This was an action brought in the court of. common plea» by the plaintiffs against the defendants for an injunction.
*484 The petition alleged that the plaintiffs were wholesale dealers and manufacturers of matches of a certain line, grade and quality, which matches were sold in certain cases, boxes and packages, labeled and stamped with a certain device and trademark ; that said stamp or device so stamped on said boxes is, “ The Acorn Parlor Match.” Plaintiffs say they are the originators of the said “ The Acorn Parlor Match ” trade-mark, and are the exclusive owners thereof; that they have given much time, labor and pains to the maintaining of said matches which they have sold under said trade-mark; that said trademark has acquired a great reputation by reason of their efforts, and that it has been a source of great profit to them.
That defendants, well knowing plaintiffs’ rights to said trade-mark, manufactured or in some way became possessed of a certain lot of said matches, and have sold and are selling the same, thereby greatly diminishing plaintiffs’ profits; that the same is in- fraud of plaintiffs’ rights and to their damage; wherefore, plaintiffs pray for a restraining order, restraining defendants from selling matches under plaintiffs’ trade-mark.
The answer of the defendants was in effect a general denial.
Upon the filing of the petition in the court of common pleas a restraining order was issued which afterwards was, upon motion, dissolved, from which jndgment an appeal was prosecuted in this court.
Upon the trial in this court the following facts were shown to exist:
The defendants had been selling up to the time of the bringing of this suit, and now have in their possession a large quantity of matches marked as set out in plaintiffs’ petition ; that is, they are a square match with brown colored heads, put up in brown paste-board boxes, marked in fancy black letters peculiarly arranged on the back of the box, “ The Acorn Parlor Match.” The defendants bought these goods of the Diamond Match Company, of St. Louis, Mo., from per- *485 sods who had obtained them directly from the Lebanon Match Company, of Lebanon, Pennsylvania.
About Dec. 1st, 1889, the plaintiffs originated and commenced to sell and introduce to the public matches, as heretofore described; that said matches were made for the plaintiffs by The Lebanon Match Company, of Lebanon, Penn., under their order and direction; that they were the owners of the brand and trade-mark, if it was a trade-mark; that matches had not been hitherto sold in boxes similarly marked.
The plaintiffs had expended considerable money in introducing said brand of matches, and their trade was a profitable one; that the sale of these matches by defendants would be injurious to them; that these matches, in possession of the defendants, were manufactured by the Lebanon Match Company withont plaintiffs’ knowledge or consent, and so sold to the Diamond Match Company, of St. Louis, who sold them to defendants.
Two reasons were urged by defendants why the plaintiffs should not have the relief asked :
1st. They claimed to have purchased the matches in the open market and from the agents of the plaintiffs.
2nd. That what plaintiffs claim to be a trade-mark is not a trade-mark, inasmuch as it does not indicate the true ownership or origin of the goods.
As to the claim that the goods were purchased in the open market: We have no such thing as market overt in this country. The facts show clearly that the matches were not purchased from the Lebanon Match Company acting in the sale of the matches as the agent of the plaintiffs, therefore if what was sold by the Lebanon Match Company was the property of the plaintiffs, and was wrongfully sold, the purchaser could not acquire a good title to the property as against the plaintiffs. See Newmark or Sales, sections 183-4-5.
The only other question in the case is, is the thing claimed tosbe a trade mark, a trade mark ? A majority of the court is. of the opinion that it is.
*486 What is a trade mark ?
Bouvier says it is “A symbol, emblem or mark which a tradesman puts upon or wraps or attaches in some way to the goods he manufactures or has caused to be manufactured.55
Upton says, p. 9, “A trade mark is'a name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant, in order to designate that he manufactures and sells.55
Browne says, at section 80, that an exact definition is not without difficulty, and then proceeds at length to review the adjucated cases.
At section 144, Browne says, speaking of indication of origin or ownership, “This is a phrase that of late years has been the source of much perplexity, simply because not understood in its legal acceptation55; and at the following section says, “That question can be intelligently answered only after the examination and collection of many adjudications.55
It is this necessary element of a trade mark that defendants5 counsel claimed in argument did not exist in this case, that the device or design, “The Acorn Parlor Match,55 in the form and manner produced, does not show where it is produced, or by whom it is produced. This is undoubtedly true as to a stranger ; that is, to one never having seen such a case of matches, it undoubtedly would not show to him that the maker or seller of “The Acorn Parlor Match55 was Peurrung, Bros. & Co., and that they carried on their business in the city of Cincinnati, Ohio; but to the trade or to persons who deal in matches — if the facts be as plaintiffs allege, and which we find to be true, viz. that these plaintiffs originated and designed this brand, introduced and sold it to the trade, and no other parties had ever sold it- — -these facts would show the origin and ownership; and this is what we think is meant by indicating origin or ownership.
If name of manufacturer', place of business, and similar exact statements are to accompany the device, no symbol or sign *487 alone, such as we see every day, such as “Ivory Soap,” “Len-ox,” “Royal Baking Powder,” and many others would have any value as a trade mark, and the very object of a trade mark, that is, a symbol, sign or device, would be defeated. But, as we understand it, the books are full of adjudicated cases where similar designs have been held to be trade marks.
Roelker & Jelke, attorneys for plaintiffs.
Paxton & Warrington, attorneys for defendants..
See 44 Mo. 188,. where “Charter Oak” alone was held to be a trade mark when placed on stoves. 81 Ky. 73. 18 Official Gazette, Patent Office, 923 and 1277.
See, also, for a full discussion and review of the authorities, 2nd Ch. Div. p. 441.
From our foregoing opinion, it follows that the plaintiffs are entitled to the relief prayed for, and a decree will be entered accordingly.
Judge Cox dissents.